Richard R. Heath, Director, DEPARTMENT
OF FINANCE AND ADMINISTRATION *v.* LITTLE
ROCK PAPER COMPANY

74-262                                   520 S.W. 2d 196

Opinion delivered March 3, 1975

*Karl D. Glass*, Chief Counsel; *Harlin R. Hodnett, Robert G. Brockman, James R. Eads, Jr., James R. Cooper*, for appellant.

*Rose, Nash, Williamson, Carroll & Clay* by: *William Nash* and *James H. Wilkins, Jr.*, for appellee.

J. FRED JONES, Justice. The question on this appeal is whether certain specified paper, plastic and styrofoam products are exempt from the Arkansas Gross Receipts tax under Ark. Stat. Ann. § 84-1904 (i) (Repl. 1960).

The facts appear as follows: The appellee, Little Rock Paper Company, is a wholesaler of paper and plastic products in Arkansas. Many so-called "fast food" restaurants purchase from the appellee certain paper, plastic and styrofoam containers and other items which the restaurants use in dispensing their food and drink products to the buying public. The specific items involved in this case case are separately designated as follows:

"A. Paper and styrofoam cups in various sizes used for coffee, soft drinks and other liquids·

B. Paper and plastic lids for such cups;

C. Paper bowls and wrappers used for pies and pastries;

D. Paper boats and sacks used for French fried potatoes;

E. Paper plates;

F. Paper wrappers, boxes, and foil wrappers used as containers for sandwiches;

G. Paper and plastic containers for cole slaw, baked beans, etc.

H. Plastic lids for such containers.

I. Paper buckets and boxes used for fried chicken.

J. Paper and plastic straws and stirrers;

K. Plastic tableware and utensils;

L. Paper napkins and premoistened towelettes."

The appellant, Richard R. Heath, as Director of the Department of Finance and Administration, collected the gross receipts tax from the appellee paper company on the sale of the above products. The tax was paid under protest and the paper company filed its petition in chancery to recover the tax so paid pursuant to Ark. Stat. Ann. § 84-1911 (Repl. 1960). The chancellor held the items exempt and on appeal to this court the Director relies on the following point for reversal:

"The various items of tangible personal property purchased by members of the Arkansas Restaurant Association are not exempt from Arkansas Gross Receipts tax pursuant to Section 84-1904 (i)."

Ark. Stat. Ann. § 84-1904 (i) (Repl. 1960), under which the exemptions are claimed in this case, reads as follows:

"Gross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased, whether within or without the State, provided that such sales within the State are made to persons to whom sales tax permits have been issued as provided in section 12 [§ 84-1913] of this act.

Goods, wares, merchandise, and property sold for use in manufacturing, compounding, processing, assembling or preparing for sale, can be classified as having been sold for the purposes of resale or the subject matter of resale only in the event such goods, wares, merchandise, or property becomes a recognizable, integral part of the manufactured, compounded, processed, assembled or prepared products. Such sales of goods, wares, merchandise, and property not conforming to this requirement are classified for the purpose of this act [§§

84-1901—84-1904, 84-1906—84-1919] as being 'for consumption or use.' "

It is well settled that the clear Legislative intent in the passage of § 84-1904 (i), *supra*, was to exempt purchases that are made for the purpose of resale, to the end that the same property will not be twice subjected to the same tax. *Hervey* v. *Southern Wooden Box*, 253 Ark. 290, 486 S.W. 2d 65; *Hervey* v. *International Paper Co.*, 252 Ark. 913, 483 S.W. 2d 199.

In *Wiseman* v. *Ark. Wholesale Grocers' Ass'n*, 192 Ark. 313, 90 S.W. 2d 987 (1936), we denied a tax exemption upon the purchase of wrapping paper, paper bags and twine to be used in the retail sale of groceries. We reasoned in that case that grocers buy such wrapping materials for consumption in the course of their own business rather than for resale.

In *McCarroll, Comm'r of Rev.* v. *Scott Paper Box Co.*, 195 Ark. 1105, 115 S.W. 2d 839 (1938), it was stipulated that Wortz Biscuit Company, a manufacturer, purchased paper boxes to be used in the sale of prepackaged cakes, cookies, etc. Wortz also sold the same products in bulk at a lower price. The paper boxes became a component of the product which was sold in the box to the jobber, retailer, and ultimately to the consumer. The cost of the box measured into, and became an element in the cost to the final consumer. In that case we said:

> "It is clear that the Wortz Company sells at wholesale to a retailer *a package of its manufactured products* — not a quantity of cakes or cookies or crackers *enclosed in a box it has consumed.*"

In that case we also said:

> "Expressed differently, the Wortz Company proposes to prepare, box, and offer in the market at wholesale the particular commodities in question. It buys flour, sugar, soda, salt, shortening, flavoring, etc., as ingredients. None of these components is taxable under act 154 when purchased for the purposes mentioned. The plan of sale, however, calls for wrapping or enclosure in individual

cartons at the time of manufacture; and it is for the latter purpose that purchase of pasteboard boxes is made."

The appellant in the *Scott Paper Box Co.* case relied on *Wiseman* v. *Ark. Wholesale Grocers' Ass'n, supra,* but *Wiseman* was distinguished in the *Scott Paper* case in language as follows:

"In the Wiseman case the wrapping paper, bags, and twine were sold for convenience of retailers in manually wrapping or enclosing bulk commodities. The price of a dozen oranges, a peck of potatoes, a roast, and other merchandise customarily found in a retail grocery store, is predetermined either by weight or count, without reference to the attributes of delivery."

In *Hervey* v. *Southern Wooden Box, supra,* we held that paper cups sold to the Coca Cola Bottling Company for use in its automatic vending machines were exempt from the tax, but that wooden boxes sold to the bottling company for the delivery of bottled drinks were not exempt.

In the case at bar the sales were made to various members of the Arkansas Restaurant Association primarily engaged in the "fast food" business. Mr. Wesley Hall, the president of Minute Man of America, Inc., testified that the Minute Man chain of restaurants operates on a self-service and pick-up basis under which food is purchased for consumption on the premises or to be carried out. He said that because of public demand for speed and convenience of service, Minute Man package services all its products in the various paper, plastic and styrofoam containers listed in the complaint, and pays sales tax on its purchases of the various items listed in the complaint. He said that paper cups, lids and straws are purchased solely for use in the sale of soft drinks at retail; that these drinks are compounded by Minute Man personnel and after the customer pays therefor, the Minute Man personnel puts the lid on the container, adds a straw and the assembled product is delivered to the customer. He said the components of a 16 ounce Coke currently cost Minute Man 6.6 cents; that the cup, lid and straw make up 55.3% of the cost, or 3.65 cents, and the cost of each compo-

nent, including the container, lid and straw, is passed on to the consumer. He said the same procedure is used in the sale of a deep dish apple pie. He said the pie is placed in a single serving paper cup and a lid, a plastic spoon and paper napkin are added thereto. He said the same procedure was used in connection with such items as hamburgers and French fries. He said the French fries are sold in paper trays with wrapper, napkin and fork added, and that these compoents make up 20% of the product cost and 5.8% of the retail selling price. He said that the wrapper on the container for French fries served the same purpose as the lid on the beverage containers, and that the fork and napkin are provided solely for the convenience of the customer. He said that the food products sold by Minute Man are placed in the containers for delivery to the customer after the food itself is actually prepared.

On cross-examination Mr. Hall said that a customer at Minute Man has an option of receiving coffee in a paper cup, styrofoam cup, or a china cup, and that the charge for the cup of coffee is the same in spite of the containers available to the customer. He said that if a customer chooses not to take a lid or straw in the purchase of a soft drink, there is no price reduction for the product. He said that straws, napkins and items of that nature are not necessary items in preparing beverage products for sale but are offered to the customer as a convenience. He said the food wrappers for hamburgers and sandwiches have the name of the firm on them, and that the paper cups, napkins and paper bags used for carrying items out of the eating establishment have advertising printed on them.

On redirect examination Mr. Hall said that soft drinks sold by Minute Man automatically include a straw and lid and it is then up to the customer to decide whether or not the straw and lid leave the premises or stay on the premises.

Mr. Marvin D. Johnson, Jr., president of some of the Kentucky Fried Chicken outlets in Arkansas, testified as to the procedure in the sale of Kentucky Fried Chicken products substantially as did Mr. Hall. He said the Kentucky Fried Chicken products are placed in different size containers

and sold to the customer under order designation such as "dinner box," "bucket of chicken," etc. He said that the dinner box contained three pieces of chicken, cole slaw, mashed potatoes and gravy, each in a four ounce container with a lid. He said two rolls, a spoon, a towelette and a napkin are also added, and the cost of the paper products is included in the overall price charged the customer. He said that potato salad and cole slaw were made up at the various Kentucky Fried Chicken outlets and delivered to the customer in a 16 ounce paper salad container with a plastic lid. He said that the Kentucky Fried Chicken outlets are not manufacturers of "fast food" products but are retailers; that the outlets purchase raw chicken and then cook the chicken and place it in the boxes for sale at each retail outlet. He said Kentucky Fried Chicken retail outlets do utilize paper bags for containers for boxed chicken, and that paper bags when so used, are not unlike the utilization of paper bags in retail grocery stores.

Mr. Richard W. Sherwood, president of W. G. W. Corporation, trading as "Burger King," testified as to the procedure in packaging and selling that corporation's products substantially as did Mr. Hall and Mr. Johnson. He said Burger King is a national chain of franchised restaurants and operates on a self-service and pick-up basis because the bulk of its trade is carry out. He said that each of the three Arkansas Burger King locations holds a gross receipts tax permit and pays a three per cent sales tax on the total revenue taken in at the three locations.

We conclude that the chancellor was correct as to items A, B, C, D, F, G, H and I, but on trial de novo we reverse as to items E, J, K and L. We are of the opinion, under the evidence in this case, the paper and styrofoam cups used for dispensing coffee, soft drinks and other liquids, and the paper and plastic lids for such cups; the paper bowls and wrappers used in the dispensing of pies and pastries; the paper boats and paper covers used for French fried potatoes; paper wrappers, boxes, and foil wrappers used as containers for sandwiches; the paper and plastic containers for cole slaw, baked beans, etc., and the plastic lids for such containers; and the paper buckets and boxes used for fried chicken are all

items exempt under our reasoning in *McCarroll* v. *Scott Paper Box Co.* and *Hervey* v. *Southern Wooden Box, supra,* but we hold that paper plates; paper and plastic straws and stirrers; plastic tableware and utensils; paper napkins; brown paper sacks and premoistened towelettes are subject to the tax under our reasoning in *Wiseman* v. *Ark. Wholesale Grocers' Ass'n. supra.*

The decree is affirmed as to items A, B, C, D, F, G, H and I, and is reversed as to items E, J, K and L.

Affirmed in part; reversed in part.

HOLT, J., not participating.