A. B. HERVEY, JR., COMMISSIONER OF REVENUES *v.* SOUTHERN WOODEN BOX, INC. ET AL

5-6004                                                486 S.W. 2d 65

Opinion delivered October 23, 1972

[Rehearing denied November 27, 1972.]

*Walter Skelton,* for appellant.

*Frierson, Walker, Snellgrove & Laser* and *Shaver & Shaver,* for appellees.

GEORGE ROSE SMITH, Justice. The question in this case is whether one of the appellees, CocaCola Bottling Company of Southeast Arkansas, must pay the Arkansas sales tax or use tax upon its purchases of certain paper cups and wooden cases that it uses in marketing soft drinks. The chancellor held, in two cases consolidated for trial, that neither the purchase of the cups nor the purchase of the cases is a taxable transaction. Since the issues in the two cases are quite different, we discuss them separately.

First, the paper cups. CocaCola, as plaintiff, brought suit to recover use taxes which it had paid under protest upon its purchase of paper cups from out-of-state manufacturers. CocaCola claims an exemption under the "sale for resale" provisions of the statutes, which exempt property that becomes "a recognizable, integral part of the manufactured, compounded, processed, assembled or prepared products." Ark. Stat. Ann. § 84-1904 (i) and 84-3106 (b) (Repl. 1960). As we pointed out recently in *Hervey* v. *International Paper Co.,* 252 Ark. 913, 483 S.W. 2d 199 (1972), the clear legislative intent is to exempt purchases that are made for the purpose of resale, to the end that the same property will not be twice subjected to the same tax.

The paper cups in question are bought by CocaCola solely for use in its own coin-operated retail vending machines. When a customer deposits the proper coin or coins in one of those machines, the machine first drops one of the paper cups into an allocated space and then fills the cup with a cold carbonated beverage. The customer takes the paper cup and presumably discards it when he finishes the drink; certainly the cup is not returned to the CocaCola Company for re-use. The company holds a gross receipts tax permit and pays the 3% sales tax, properly called the gross receipts tax, upon the total revenue derived from its vending machines.

The appellant, in arguing that the sale of the paper cups to CocaCola is taxable, relies upon our decision in *Wiseman* v. *Ark. Wholesale Grocers' Assn.*, 192 Ark. 313, 90 S.W. 2d 987 (1936). There we denied a tax exemption to grocers upon their purchase of wrapping paper, paper bags, and twine, to be used in the retail sale of groceries. Our reasoning was that grocers buy those wrapping materials for consumption in the course of their own business rather than for resale.

The *Wiseman* case was clearly and logically distinguished by Chief Justice Griffin Smith in *McCarroll* v. *Scott Paper Box Co.*, 195 Ark. 1105, 115 S.W. 2d 839 (1938). There it was stipulated that the Wortz Biscuit Company, a manufacturer, purchased paper boxes to be used in the sale of prepackaged cakes, cookies, etc. (which Wortz also sold in bulk at lower prices). The paper boxes became a component part of the product, which was sold in the box to the wholesaler, jobber, retailer, and ultimate consumer. The cost of the box merged into and became an element in the cost of the finished article, representing twelve to fourteen per cent of the net selling price, and was so computed by the biscuit company, rather than being considered by it as part of its general overhead expense.

In the *McCarroll* case we held that Wortz purchased the paper boxes for resale. In distinguishing the earlier *Wiseman* case the opinion pointed out that in a grocery store the price of a dozen oranges, a peck of potatoes, a

roast, and other groceries is predetermined either by weight or by count, without reference to the paper bag that the checker uses for delivering such articles to the customer. Hence those paper bags are purchased by the grocer for consumption in the course of his business rather than for resale to the customer. Thus the cost of the paper bags merely enters into the selling price of the groceries in the same way as other overhead expenses, such as rent, utility bills, labor, etc.

By contrast, the cost of the boxes used by Wortz Biscuit Company in *McCarroll* was allocable to the particular product being sold rather than to the overhead cost of doing business. In the case at bar the same showing was made by CocaCola in the trial court with respect to its paper cups. Their cost represents one sixth of the total cost of each drink sold through a vending machine and is considered by the company in fixing the price of such drinks. It follows that the company pays a sales tax upon the paper cups, as a component part of what the statute describes as the "assembled or prepared products," when the company pays its tax upon the gross revenue derived from its vending machines. The chancellor correctly held that CocaCola's purchase of the paper cups from the manufacturer is exempt from the use tax, as a purchase for resale.

Secondly, the wooden cases. CocaCola is again an interested party, though the suit to recover taxes paid under protest was brought by the other appellee, Southern Wooden Box, Inc., which manufactures the wooden cases. Here again CocaCola's argument is that it buys the cases for resale.

CocaCola's proof upon this branch of the case was largely directed toward showing that bottling companies must deliver their products in compartmented wooden cases, to keep the bottles of carbonated beverage from being broken. That showing, however—that the cases are essential to the company's method of doing business—does not necessarily show that the cases are purchased for resale. In fact, it is the company's failure to make that

latter showing that compels us to conclude that the purchase of the cases is not a tax-exempt transaction.

The wooden cases are of two types, which CocaCola buys at different prices. It pays $1.07 for a case compartmented to hold 24 bottles and $.96 for a case compartmented to hold four six-packs.

CocaCola contends that it actually "sells" the wooden cases to its retailers, but the proof does not support that contention. CocaCola's routemen deliver the company's bottled beverages, in the wooden cases, to grocery stores, filling stations, restaurants, and other retailers. The 24 bottles in a case sell at wholesale for $1.25 (or did in the early 1960's, the years involved in this case). The routeman also collects a deposit of 12 cents upon each wooden case that he delivers to the retailer. At the same time he picks up other cases of empty bottles, crediting the retailer with 12 cents for each wooden case that is returned. If a retailer or consumer fails to return a case he loses his 12-cent deposit, but no other charge for the missing case is made.

It is obvious from the proof, simply as an economic fact, that CocaCola does not engage extensively in selling, for 12 cents each, cases that it buys for $.96 or $1.07. No such loss could conceivably be taken with regularity in transactions involving only $1.25 as the basic price for the beverage being sold. In fact, the proof is clearly to the effect that the cases are not sold. The only wooden case examined at the trial, which came from an area assigned to another CocaCola bottling company, was marked "Property of the CocaCola Company." The chief witness for the appellee bottling company testified that his company's cases were "usually" just marked "Coca-Cola," but that was done to identify "our cases" so they couldn't be taken by somebody else. He admitted that the company certainly hoped that the cases would be returned. He also stated that there are statistics showing the average number of times that the cases are returned to a bottling company. Those statistics were not put in the record, even though CocaCola had the burden of proving

its claim to an exemption from the tax. *Hervey* v. *International Paper Co., supra.*

We hold that CocaCola must prove that it buys the wooden cases for the purpose of reselling them. We do not interpret the broad statutory definition of a sale to include every transaction in which there is a transfer of possession, for a consideration. Ark. Stat. Ann. § 84-1902 (c). The statute must be read as a whole. If the reference to a transfer of possession were applied literally in every instance, absurd results would follow. For instance, a company engaged in renting automobiles would not be required to pay a sales tax upon its purchase of cars, because it would be buying them for resale. Similarly, a company selling butane gas in heavy iron bottles would be reselling the bottles, even though its customers were required to return them. It is our duty to give the statute a reasonable construction, not an absurd one.

The section of the statute now before us clearly provides that if the sale is not for resale, then it is for the processor's own "consumption or use." Ark. Stat. Ann. § 84-1904 (i). We think it plain that CocaCola is using the wooden cases, not reselling them.

Although the statute, as we have said, is designed to prevent the same property from being subjected twice to the same tax, there is a correlative legislative intent that all property be subjected to the tax at some point in the course of its manufacture and sale to the ultimate consumer. The "sale for resale" section of the statute pointedly confirms this intent by its requirement that, for the initial sale to be exempt, the resale must be to a person having a sales tax permit. In our judgment the proof falls decidedly short of showing that CocaCola deliberately buys wooden cases for about a dollar each to resell them for 12 cents apiece. If the company's initial purchase from the manufacturer of the cases is not taxable, then the cases escape taxation altogether, contrary to the intent of the statute. We accordingly hold that the purchases are not tax exempt. That conclusion makes it unnecessary for us

to discuss the appellant's contention that the court should have admitted proof of the custom within the industry with respect to the retailer's failure to pay any tax upon the wooden cases.

Affirmed as to the paper cups, reversed as to the wooden cases.

HOLT, J., not participating.

HARRIS, C.J., and BYRD, J., dissent as to the reversal.

CONLEY BYRD, Justice, dissenting. I disagree with that portion of the majority opinion which removes the wood boxes from the "sale for resale" exemption set out in Ark. Stat. Ann. § 18-1904. That statute provides:

"§84-1904. EXEMPTIONS FROM TAX. There is hereby specifically exempted from the tax imposed by this Act the following:

(a) . . .
(i) Gross receipts or gross proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased, whether within or without the State, provided that such sales within the State are made to persons to whom sales tax permits have been issued as provided in section 12 of this Act.

Goods, wares, merchandise, and property sold for use in manufacturing, compounding, processing, assembling or preparing for sale, can be classified as having been sold for the purpose of resale or the subject matter of resale only in the event such goods, wares, merchandise, or property becomes a recognizable, integral part of the manufactured, compounded, processed, assembled or prepared products. Such sales of goods, wares, merchandise, and property not conforming to this requirement are classified for the purpose of this act as being 'for consumption or use.'"

Ark. Stat. Ann. §84-1902 provides:

"DEFINITIONS. —The following words and phrases shall, except where the context clearly indicates a different meaning, have, when used in this act [§§84-1901—84-1904, 84-1906—84-1919], the following meanings:

(a) . . .
(c) Sale: *The term 'sale' is hereby declared to mean the transfer of either the title or possession for a valuable consideration of tangible personal property, regardless of the manner, method, instrumentality, or device by which such transfer is accomplished.* The term 'sale' is also declared to include the exchange, barter, lease or rental of tangible personal property where such exchange, barter, lease or rental results or may result in either the transfer of the title or the possession. ..." [Emphasis mine]

F. M. Bellingrath, the president of appellee Coca-Cola Bottling Company of Southeast Arkansas, testified as follows:

"Plaintiff purchases glass bottles of various sizes, which bottles are filled with the particular beverage sold by the Plaintiff. Plaintiff's beverages are bottled under carbonation and for this reason it is necessary that the beverage remain sealed in the bottles until the moment the beverage is consumed. Plaintiff also purchases wooden cases, which cases are designed to carry twenty-four (24) bottles of Plaintiff's beverages. The customary way of delivering Plaintiff's beverages is to place twenty-four (24) bottles of beverages in each wooden case and load said bottles and cases on Plaintiff's truck for delivery to its customers.

"The wooden cases filled with bottles containing beverages are delivered to the customer by the Plaintiff's salesmen-drivers, each of whom is assigned

a particular territory or route. Each day a salesman-driver's truck is loaded with an assortment of beverages at the bottler's plant, and the salesman-driver calls on various customers on his route. These customers include independently owned grocery stores, drug stores, branches of large chain stores, restaurants and other establishments engaged in the sale of food or beverage for consumption. Most all the sales are for cash, in which case the customer pays the driver upon delivery of the goods. The price which a customer pays for a wooden case full of bottles containing beverage sold to that customer by the Plaintiff includes a charge commonly referred to as a 'deposit'. The deposit for the glass bottle depends on the size of the bottle. The deposit that Plaintiff require was 2¢ per bottle and 12¢ per wooden case. When Plaintiff sold to a customer, or retailer, the bottled drinks were sold for $1.25 per case, exclusive of deposit required. The total amount received from each customer was $1.25 for 24 bottles of beverage contained in a wooden case, and 60¢ deposit, on bottles and wooden case, or a total of $1.85.

"At the time that the salesman-driver delivers beverages to a customer of Plaintiffs, he also picks up from the customer empty bottles and empty wooden cases, which the customer has purchased from the public after the beverage originally contained in those bottles has been consumed. For each such empty bottle and used wooden case picked up by the salesman-driver, the customer is given a credit against his purchase equal to the amount of the 'deposit' charge currently included by the bottler in its price of full bottles and wooden cases. This credit is allowed to the customer whenever the empty bottle or wooden case (as the case may be) picked up by the driver-salesman is one which is designed for use in connection with the sale of the beverage sold by that particular bottler without regard to whether or not the empty bottle, or wooden case was originally sold by that bottler.

"There is no way of ascertaining whether any particular individual bottle or wooden case will be return. However, based upon the experience of the trade, statistical data has been prepared from which the average number of times a bottle or wooden case will be returned (commonly called 'trips' in the trade) can be calculated. These averages differ among bottlers and among various sizes of bottles or wooden cases.

"When Plaintiff delivers such bottles and wooden cases to their customers, the Plaintiff surrenders the possession of such containers.

"Used bottles and wooden cases may be, and commonly are, returned to Plaintiff by persons other than the customer who originally purchased them; there is no necessary correlation between the number of bottles or wooden cases delivered to any customer and the number, if any, returned by such customer to Plaintiff. The sales record of Plaintiff may indicate the number of full bottles and wooden cases sold to its customers from time to time, Plaintiff does not maintain records in their books of account showing the number of bottles or wooden cases in the possession of any customer; and no customer is accountable to Plaintiff for the return of any bottles or wooden cases.

"When Plaintiff ships and sells its soft drinks in the bottles and cases as above described, it is the hope of the Plaintiff that containers, bottles and cases referred to, will be used more than one time for packaging and selling Plaintiff's products to return the bottles and cases. Plaintiff customarily requires the customer to deposit an amount which represents a part of the cost of such items, and the deposit will be returned to the customer upon the return of such items. In some instances the bottles and cases are returned and in other instances they are not returned. If the bottles and cases are not

returned, no refund is made by the Plaintiff to the customers of the Plaintiff.

"Although the cases used cost considerably more than the 12¢ deposit which is made, there is no extra charge for the deposit.

"In some instances the wooden cases are never returned to Plaintiff and in such instances no refund is made by Plaintiff. In those instances in which wooden cases, damaged or undamaged, are returned to Plaintiff, refunds are made thereon. Damaged wooden cases, whether damaged by the customer or not, are repaired if repairable; and undamaged or repaired wooden cases are re-used. In instances where wooden cases are lost, destroyed or damaged beyond repair, no refunds are made by the Plaintiff."

. . .

"Q. One more thing. Is it practical to deliver bottles to your customers, merchants in any way other than in a wooden case?

A. No sir, unless in very recent times they are packed in a reusable fiber case.

Q. But, I mean some type of case which is either wood or plastic or similar, but the same type of case?

A. Right.

Q. Why is that?

A. Because the bottles contain carbonated beverages and these bottles must be protected from bumping into each other, so they won't have an impact and burst, and so they are packed in these type cases to be delivered to the consumer and for his use."

Donald Goens, a witness called by appellant, testified that he was the manager for Safeway Stores, Rodney

Parham and Markham, Little Rock, Arkansas. He identified a wooden box as one obtained from his store. He then testified as follows.

"Q. This box on the floor has been introduced into evidence. Would you tell the Court what you know about how we acquired that box?

A. Well, ..., you and Mr. Lewis came into the store and we—you asked questions as to the contents of the box, what they looked like, and I took you in the back room stock area and you observed these and took this out, this particular empty case of our reserve empty boxes.

Q. And did I then express a desire to take it with me?

A. Yes, sir.

Q. And, what was required for me to do that?

A. A deposit. I handled the transaction myself." On cross-examination Mr. Goens testified as follows:

"Q. Mr. Goens, you testified that Mr. Skelton paid you the deposit and you gave him this box? Did you understand that he was going to offer this in as evidence here in the Court?

A. No, sir.

Q. Did you expect to get the box back?

A. No, sir.

Q. In other words you sold him the box didn't you?

A. Yes, sir.

When the foregoing facts are considered in the context of the statutes it would appear that the majority has

ignored the language thereof—at least no explanation has been given to show that the statutory language is not applicable.

Ark. Stat. Ann. §84-1904, *supra* provides an exemption from the Gross Receipts Act for "sales for resale." By Ark. Stat. Ann. §84-1902, the definition of a "sale" "... is hereby declared to mean the transfer of either title or *possession* for a valuable consideration of tangible personal property, *regardless of the manner* ...by which such transfer is accomplished." The definition did not stop there but further asserted that a sale includes "the exchange...of tangible personal property where such exchange ... *results or may result in* either the *transfer of the title or possession.*" Under the facts set out above, the sale by Southern Wooden Box, Inc., to appellee Coca-Cola Bottling Company of Southeast Arkansas amounts to a "sale for resale" within the definition of the terms set out above. The bottling Company certainly had a permit and from the facts recited, above, they certainly bought the boxes for the purposes of transferring possession to others for a valuable consideration. Furthermore, appellant's own witness asserted that he had title to the box he sold to appellant's counsel.

The record also substantiates the Bottling Company's claim that it is entitled to the exemption under the definition of the term "sale for resale" given to manufacturers and processors under Section 84-1904, above. That section provides: "...property sold for use in ... processing, assembling or preparing for sale, can be classified as having been sold for the PURPOSE of resale . . . in the event such ... property becomes a recognizable integral part of ... processed, assembled or prepared products." The proof is here that the boxes are a necessary and integral part of the preparing for sale of Coca-Cola. Admittedly, the boxes are a recognizable and a integral part of the prepared product sold by the Bottling Company. Thus the boxes not only come within the definition of the term "sale" as defined in Section 84-1902, but they also come within the definition of a "sale for resale" given to manufacturers and processors in Sec-

tion 84-1904 (i). Added to the foregoing is the administrative interpretation of the Gross Receipt Act since 1933. Therefore, it appears to me that the majority, instead of construing the Gross Receipts Act, is legislating.

The fallacy of the majority's position that the sale from Southern Wooden Box, Inc., to the Bottling Company does not amount to a "sale for resale" can best be demonstrated by the position in which the Bottling Company will find itself in picking up the boxes from the merchants to whom they have been delivered when full of cokes. At that point a transfer of possession from the merchant to the Bottling Company is made for a valuable consideration and in that event, under the majority opinion, the transfer to the Bottling Company will not qualify as a "sale for resale" and of course the Bottling Company will again be required to pay another tax. Thus the majority opinion meets itself "coming and going" for it also asserts that the same property should not be subjected twice to the same tax. Therefore, notwithstanding, the majority's assertion that the same property should not twice be subjected to the same tax, the net effect of the majority's determination— *i.e.,* that a transfer from Southern Wooden Box, Inc. to the Bottling Company is not a "sale for resale"—also dictates that a transfer from the merchant to the Bottling Company for a valuable consideration does not qualify as a "sale for resale". Thus if the boxes are returned to the Bottling Company as many times as the majority would lead one to believe, the Bottling Company will have paid a sales tax many times on the same box.

The suggestion in the last paragraph of the majority opinion that " ...the proof falls decidedly short of showing that Coca-Cola deliberately buys wooden cases for about a dollar each to resell them for 12 cents..." is a conclusion that I cannot reach from the record. The unmitigated proof, and the only proof, is that when the cases are full of cokes, they are physically transferred to the customer (a retailer) for a valuable consideration and that the customer thereafter has no obligation to Coca-Cola to re-

turn or otherwise preserve the box. Furthermore, the majority's suggestion of absurd results and analogy to the renting of automobiles and the distribution of butane gas in heavy iron bottles is erroneous. In the first place the taxing of automobiles to an owner or purchaser is controlled by Ark. Stat. Ann. § 84-1903 (e). In the next place the analogy presupposes a situation in which "a return" is required. Under the facts here the transfer of possession is made for a valuable consideration and no obligation to return is imposed. Thus in effect the customer gets both the title and the possession as was demonstrated when appellant's counsel purchased the box they introduced in evidence. By Act 181 of 1965, [Ark. Stat. Ann. § 84-1902 (supp. 1972)], the definition of the term "sale" was amended to provide"...*that the tax shall not apply to gross receipts or gross proceeds derived from leases or rentals of tangible personal property upon which either the Arkansas Gross Receipts Tax or Compensating Tax was paid at the time of purchase of such tangible personal property."*

For the reasons stated, I respectfully dissent.