Jim C. PLEDGER, Director, Arkansas Department of Finance and Administration *v.* C.B. FORM COMPANY

93-844                                            871 S.W.2d 333

Supreme Court of Arkansas
Opinion delivered February 21, 1994

*Ricky L. Pruett*, for appellant.

*Kinard, Crane & Butler*; and *Woodward & Epley*, by: *Michael G. Epley*, for appellee.

ROBERT H. DUDLEY, Justice. This case involves the interpretation and construction of the Arkansas Gross Receipts Act of 1941, as amended.The chancellor ruled that the taxpayer's manufacture of forms, or molds, is exempt from the gross receipts, or sales, tax. We affirm.

The taxpayer, C.B. Form Company, manufactures plaster and cardboard forms for sale to its sole customer, American Fuel Cell and Coated Fabrics Company, or Amfuel. Amfuel utilizes the forms to build fuel cells that fit into a cavity in the wing and fuselage of military and commercial aircraft. In manufacturing the fuel cells, Amfuel applies a precut rubber sheeting or coated

fabric to the exterior surface of the form. Two or more plies may be used. This creates an uncured, or green, fuel cell. The green cell and the form inside it are placed in a large autoclave to complete the adhesion process and make one integral unit of the rubber coated fabric. The heat and pressure of the autoclave, in combination with the form within the fuel cell, cause the uncured cell to acquire its permanent physical shape and characteristics. After curing, the cell and its form are submerged in a hot water vat to soften the interior plaster or cardboard form. The form is removed piece by piece through openings in the cell for fuel lines or refueling portals. The cardboard or plaster form is completely destroyed during removal and is hauled to a landfill as unusable waste. The interior of the fuel cell is inspected and packaged for shipment to the customer.

The taxpayer thought that its forms were exempt from the sales tax under that part of the machinery and equipment exemption that provides an exemption for molds and dies, and filed a claim under the Arkansas Tax Procedure Act for a sales tax refund of slightly more than $86,000. The Revenue Legal Counsel of the Department of Finance and Administration denied the claim for refund. The taxpayer filed suit in chancery court and alleged that the Department had erroneously denied its claim for the refund. The case was submitted to the chancellor on a stipulation of facts. The chancellor ruled that the forms came within the exemption that provides for "molds . . . that determine the physical characteristics of the finished product." *See* Ark. Code Ann. § 26-52-402(c)(2)(B)(i) (Repl. 1992).

Our standard of review of these cases is well settled. The taxpayer must establish an entitlement to an exemption from taxation beyond a reasonable doubt. *Pledger* v. *Baldor Int'l*, 309 Ark. 47, 827 S.W.2d 646 (1992). A strong presumption operates in favor of the taxing power. *Ragland* v. *General Tire & Rubber Co., Inc.* 297 Ark. 394, 763 S.W.2d 70 (1989). Tax exemptions are strictly construed against the exemption, and we have written that "to doubt is to deny the exemption." *Baldor*, 309 Ark. at 33, 827 S.W.2d at 648. We review tax cases *de novo. Pledger* v. *Easco Hand Tools, Inc.*, 304 Ark. 30, 800 S.W.2d 690 (1990).

The chancellor based his ruling on the following subparts of the applicable statute, Ark. Code Ann § 26-52-402:

There is specifically *exempted from the tax* imposed by this act, the following:

(1)(A) Gross receipts . . . derived from the sale of tangible personal property consisting of *machinery and equipment* used directly in producing, manufacturing, fabricating . . . articles of commerce at manufacturing . . . plants . . . in the State of Arkansas. . . .

(2)(B) *Machinery and equipment 'used directly' in the manufacturing process shall include*, but shall not be limited to, the following:

(i) *Molds and dies that determine the physical characteristics of the finished product* or its packaging material.

Ark. Code Ann. § 26-52-402(a) (Repl. 1992) (emphasis added).

The Department makes four assignments of error. The first of these is essentially a non-issue. In it, the Department argues that the forms do not qualify for an exemption as items of tangible personal property sold for resale under Ark. Code Ann. § 26-52-401(12)(a) (Supp. 1993). The chancellor did not rely on this subsection of the statute, and the taxpayer readily concedes the point. Instead, the taxpayer seeks to claim the exemption under the "mold and die" exemption quoted above. We address the point only to make clear the distinction between the two statutes.

Section 26-52-401 exempts from the collection of sales or use tax, gross proceeds on products that are sold for resale. The purpose of this statute is to prevent double taxation. *Hervey* v. *Southern Wooden Box*, 253 Ark. 290, 486 S.W.2d 65 (1972). Subsection (12)(B) allows property sold for use in manufacturing to be classified as having been sold for resale if the property "becomes a recognizable, integral part of the manufactured . . . product." Items that are destroyed or disposed of in the manufacturing process do not qualify for this exemption because if they are destroyed there is no possibility of double taxation. *See Ragland* v. *General Tire & Rubber Co.*, 297 Ark. 394, 763 S.W.2d 70 (1989). The forms manufactured by the taxpayer in this case do not become a "recognizable and integral" part of the finished fuel cell. If the taxpayer were claiming an exemption under this statute, it would be denied.

A different section, section 26-52-402, provides the exemption for machinery and equipment used directly in the manufacturing process. The purpose of this "machinery and equipment" statute is "to encourage capital investment in industrial, utility and manufacturing enterprises" for the "industrial development of the State." *See* Act 113 of 1967 (codified at Ark. Code Ann. § 26-52-402 (Repl. 1992)) (emergency clause). Section 26-52-402(a)(2)(C) provides that the machinery and equipment exemptions are "incentives to encourage the location of new manufacturing plants in Arkansas, the expansion of existing manufacturing plants in Arkansas, and the modernization of existing manufacturing plants in Arkansas through the replacement of old, inefficient, or technologically obsolete machinery and equipment." The taxpayer contends it is entitled to the exemption under the subsection of this statute that exempts from taxation "molds and dies that determine the physical characteristics of the finished product." Ark. Code Ann. § 26-52-402(c)(2)(B)(i) (Repl. 1992).

The heart of the Department's appeal lies in its second assignment of error. It argues that the taxpayer is not entitled to an exemption under the mold and die exemption, at section 26-52-402(c)(2)(B)(i). There is no dispute about the facts. The parties stipulated that the "words 'form' and 'mold' are used interchangeably in the industry," and the Department acknowledges that the forms "determine the physical characteristics of the fuel cells." The Department argues that the chancellor erred as a matter of law in ruling that the forms come within the exemption for "molds and dies that determine the physical characteristics of the finished product."

The Department contends that, pursuant to our cases, a mold must have continuing utility and be dynamic to qualify as machinery and equipment. It argues that since these molds are destroyed, they have no continuing utility, and are not dynamic and, therefore, do not qualify for the exemption. The argument misses the point that the forms come within the express language of the exemption for "molds and dies that determine the physical characteristics of the finished product."

The statute provides an exemption for molds that determine the physical characteristics of the finished product. It does not require that they be permanent. We have often written

that legislative intent must be gathered from the plain meaning of the language used in an act. *Roy* v. *Farmers & Merchants Inc. Co.*, 307 Ark. 213, 819 S.W.2d 2 (1991). The meaning of the words used in mold and die exemption is clear: There is an exemption for molds that determine the physical characteristics of the finished product. In addition, when the sentence in the subsection exempting molds is read in full, it appears that the Department's argument is contrary to the expressed legislative intent. The full sentence providing the exemption is "Molds and dies that determine the physical characteristics of the finished product *or its packaging material*" Ark. Code Ann. § 26-52-402(c)(2)(B)(i) (emphasis added). Packaging material would not ordinarily have continuing utility. There is no expressed legislative intent to construe the statute as proposed by the Department.

The Department's argument that equipment or machinery must have "continuing utility" had its genesis in our case of *Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 118 (1987). In that case the trial court ruled that gravel, which was used as a base for a temporary road to an oil extraction project, was exempt under section 26-52-402 as "equipment" used directly in the process of extracting oil. We reversed and held that the term "equipment" did not include gravel used on a temporary road. We noted that the term "equipment" was not defined in the statute, and is "an exceedingly elastic term, the meaning of which depends on context." *Id.* at 520, 732 S.W.2d at 120. We then looked at definitions of the term and held that gravel did not fit within any of them. One of the reasons for this holding was that the gravel had no continuing utility after the oil-extraction project ended. *Id.* Unlike the statute applicable to that case, the subsection of the statute applicable to the case at bar specifically defines molds that determine the physical characteristics of the finished product as "machinery and equipment." Thus, under the language of the statute, it is not necessary that molds have a "continuing utility" to come within the statutory definition of equipment.

The Department similarly argues that molds cannot come within the mold and die exception unless they also fall within the definition of "machinery" that we set out in *Heath* v. *Research-Cottrell, Inc.*, 258 Ark. 813, 529 S.W.2d 336 (1975). In that case, the taxpayer sought an exemption for a cooling tower as machinery under section 26-52-402. The statute did not define the term

"machinery" and we construed it to mean something dynamic. Contrary to the statute involved in that case, the subsection of the statute applicable to the case at bar defines molds that determine the physical characteristics of the finished product as "machinery and equipment." Again, the forms at issue fit within the express language of the statute as "machinery and equipment."

■ The Department's third assignment is valid, but does not change the result of the case. In his letter opinion, the chancellor erroneously referred to section 26-52-402(c)(2)(B)(iv) as additional authority for his ruling in this case. The Director correctly points out that the subsection cited by the chancellor refers to an exemption for the machinery and equipment producing chemical catalysts and solutions, but not to the chemicals and solutions themselves. Thus, the cited subsection does not give an additional reason to support the chancellor's ruling. Even so, the result of the case is the same since we affirm the ruling on the ground that the taxpayer clearly comes within the mold and die exception as set out above.

■ In its final argument the Department contends that, even if the taxpayer's forms fit within the definition of "molds and dies," they still do not qualify for an exemption because the statute only exempts an initial purchase, or a complete replacement, of a machine or equipment. The Department's argument is correct in its assertion that only new or replacement machines or equipment are exempt, and that repairs are not exempt. *See* Ark. Code Ann. §§ 26-52-402(a)(1)(B) and (2)(A)-(B). Even so, the forms in this case clearly come within the language of the mold and die exception, whether they be classed as initial purchases or replacement molds.

■ ■ In this same argument, the Department contends that the taxpayer is limited to an exemption for the initial mold, and not for replacement molds because *Arkansas Gross Receipts Tax Regulation GR-56* requires sellers of molds and dies to collect a tax upon replacement molds and dies that are sold to be used with power units. The director contends that since these molds are not part of a machine they "fail to satisfy an initial requirement for exemption" under the regulation. The argument is without merit for either of two reasons. First, the argument was not raised below, and we will not consider an argument for

the first time on appeal. Second, if the Department is seeking to use its power of regulation to impose a requirement that a mold be a part of a power unit in order to be exempt, it has exceeded its authority. An administrative regulation cannot be contrary to a statute. *See State* v. *Burnett*, 200 Ark. 655, 140 S.W.2d 673 (1940). The statute provides an exemption for the molds.

Affirmed.

HAYS and BROWN, JJ., dissent.

STEELE HAYS, Justice, dissenting. Admittedly, it is not entirely clear the legislature did not intend the words "molds and dies" to apply to the forms produced by C.B. Form Company (Company) and used by its sole customer, Amfuel, to produce fuel cells. But neither is it clear that the legislature *did* so intend and, unfortunately for the Company, that is the stringent test it must surpass to prevail in this litigation. In fact, in order to qualify for the exemption the Company must establish *beyond a reasonable doubt* that such was the intent of the legislature. *Ragland* v. *General Tire and Rubber Co.*, 297 Ark. 394, 763 S.W.2d 70 (1989); *Heath* v. *Westark Poultry Processing Corp.*, 259 Ark. 141, 531 S.W.2d 953 (1976). This case, perhaps more than any other in recent memory, illustrates the maxim applicable to taxation exemption: "to doubt is to deny the exemption." *Pledger* v. *Baldor International, Inc.*, 309 Ark. 30, 827 S.W.2d 646 (1992). I respectfully suggest the majority is resolving a doubtful issue against the taxing authority — the State of Arkansas — and strictly construing the exemption in favor of the Company, exactly the reverse of settled law.

In its haste to judgment the majority equates the words 'mold' and 'form' and effectively decides the case on that basis. The words may be used interchangeably in the industry, but that is not true of the Company, where the word 'form' is consistently used to refer to the disposable device now in dispute and the word 'mold' is used, in contradistinction, to refer to a reusable fiberglass structure utilized by the Company to produce the 'form.' I submit that the reusable device — the mold — meets the statutory test but that the nonreusable device — the form — does not.

If one looks no farther than the words "molds and dies that determine the physical characteristics of the finished product. . ."

the exemption might seem warranted. But to conclude that the form in this case is synonymous with 'mold,' as used in the statute, greatly over simplifies a complex issue.

The key words of the statute are "machinery and equipment" and "molds and dies." Certainly the 'form' in this case determines the physical characteristics of the finished product — the fuel cell. But is that conclusive of the issue being decided? I think not. I submit that a 'mold,' used in conjunction with the word 'die,' when strictly construed against the exemption, contemplates a device which has an ongoing function in the manufacture of a particular product, as opposed to a cardboard structure which, once used, is torn from the product piece by piece and discarded as unusable waste.

Admittedly, the statute does not require that molds and dies be permanent. But the two words are linked together in the conjunctive, suggesting a correlation, rather than in the disjunctive, and the word 'die' plainly contemplates an industrial device which is reusable over an extended life. The word is defined as "any of various devices for cutting or forming materials in a press or a stamping or forging machine;" "a hollow device of steel," "a steel block or plate." In this context it is far more plausible that by using the words "molds and dies" (under the broader heading of "machinery and equipment") the legislature was referring to devices characteristically similar and having a useful life in the manufacturing process. Indeed, we have recognized that the language used in our statute requires a "continuing utility" in order for the exemption to attach. *Ragland* v. *Dumas*, 292 Ark. 515, 732 S.W.2d 119 (1987).

Other states have interpreted the language of similar tax exemption statutes accordingly: *See, e.g., Midwestern Press, Inc.* v. *Commissioner of Taxation*, 203 N.W.2d 344, 295 Minn. 59 (1972) (lithographic plates custom made for particular printing jobs, usable for only a limited number of impressions and then scrapped, were not "machinery" for the purposes of tax exemption); *Hasbro Industries, Inc.* v. *Norbug, R.I.*, 487 A.2d 124 (1985) (the "machinery" tax exemption not applicable to clay models); *Great Western Sugar Co.* v. *U.S.*, 452 F.2d 1394 (1972) (metal plates with a cutting edge used to cut sugar beets into thin slices not entitled to tax exemption applicable to "machinery used in

the manufacture of sugar"); *Morgan County Feeders, Inc.* v. *McCormick*, 836 P.2d 1051 (Colo. App. 1992)(goods used in business are "equipment" when they have identifiable units and a relatively long period of use.)

Being unable to eliminate all reasonable doubt that the legislature intended the exemption in this instance, I would reverse.

BROWN, J., joins in this dissent.