# ARKANSAS GLASS CONTAINER CORPORATION
*v.* James C. PLEDGER, Director of the
Arkansas Department of Finance and Administration;
Timothy J. Leathers, Commissioner of Revenues;
State of Arkansas

94-1139                                          894 S.W.2d 599

Supreme Court of Arkansas
Opinion delivered March 20, 1995

*Bradley & Coleman*, by: *Jon R. Coleman* and *Robert J. Gibson*, for appellant.

*Brandon L. Clark*, Revenue Legal Counsel, for appellees.

ROBERT H. DUDLEY, Justice. Arkansas Glass Container Corporation, appellant, manufactures clear flint soda lime glass and molds it into thirty-two ounce jars. The Director of the Department of Finance and Administration and the Commissioner of Revenues, appellees, conducted an audit of appellant and assessed additional gross receipts tax, or sales tax, in the amount of $126,637.84, a penalty of $17.92, and interest of $40,507.06 for the period of December 1, 1986, through February 28, 1990. Arkansas Glass objected to the assessment and requested a hearing pursuant to the Arkansas Tax Procedures Act. An administrative law judge affirmed the assessment. Arkansas Glass petitioned the Commissioner to revise the decision of the administrative law judge, but the decision was affirmed. A final assessment was issued, and Arkansas Glass paid $167,162.82 under protest. *See* Ark. Code Ann. § 26-18-406 (Repl. 1992).

In December 1992, Arkansas Glass filed suit in chancery court in which it alleged that the natural gas it used in the manufacture of glass was exempt from taxation. It sought a refund of the amount paid under protest, plus an additional $159,292.63, which was the amount of sales tax it had paid on natural gas after the audit. The complaint contained other allegations not material to this appeal.

The chancellor ruled that the natural gas used in the manufacture of glass was not exempt from the sales tax. Arkansas

Glass appeals. The ruling of the chancellor was correct, and we affirm.

■ Arkansas Glass seeks an exemption from the sales tax. A taxpayer must establish an entitlement to an exemption from taxation beyond a reasonable doubt. *Pledger* v. *C.B. Form Co.*, 316 Ark. 22, 25, 871 S.W.2d 333, 334 (1994). Any doubt as to the exemption suggests that it should be denied. *Ragland* v. *General Tire & Rubber Co.*, 297 Ark. 394, 396, 763 S.W.2d 70, 71 (1989).

Arkansas Glass claims it is entitled to a "sale for resale" exemption under Ark. Code Ann. § 26-52-401(12)(B) (Repl. 1992 & Supp. 1993). Section 26-52-401 provides exemptions from the gross receipts tax, which is imposed by section 26-52-301. At the material time the statute specifically included a tax on the gross receipts derived from sales of natural gas. Ark. Code Ann. § 26-52-301(2) (Repl. 1992 & Supp. 1993). (After this case was filed, the General Assembly passed Act 1140 of 1993, which grants an exemption from the sales and use tax for natural gas used to manufacture glass, but that Act does not affect this case.)

■ Sale for resale exemptions are enacted by the General Assembly so that the same property will not be twice subject to the same tax. *Hervey* v. *International Paper Co.*, 252 Ark. 913, 483 S.W.2d 199 (1972). However, there is a reciprocal legislative intent that all property be subjected to the tax at some point in its manufacture and sale to the consumer. *Hervey* v. *Southern Wooden Box, Inc.*, 253 Ark. 290, 486 S.W.2d 65 (1972).

■ The test for the sale for resale exemption is whether the property becomes a "recognizable integral part" of the manufactured product. Ark. Code Ann. § 26-52-401(12)(B) (Supp. 1993); *Southern Wooden Box, Inc.*, 253 Ark. at 291, 486 S.W.2d at 67. We have defined "integral" as necessary to the completeness of the final manufactured product. *International Paper Co.*, 252 Ark. at 916, 483 S.W.2d at 201.

The manufacture of one "batch" of glass consists of placing sand, limestone, feldspar, soda ash, salt cake, carbocite, and selenium into a furnace, which is then heated by natural gas for twenty-four hours. At the end of that time 200 tons of molten glass comes out of the forehearth, or far end of the furnace. The

glass drops into a mold cavity, which is either pressed or blown into the final shape of the container. The annealing process then occurs. During the manufacturing process the furnace is, at times, heated to 2750 degrees Fahrenheit. In the process appellant uses approximately 1,800,000 cubic feet of natural gas per day, and approximately seventy percent of that amount comes into contact with the molten glass.

Sulphur is found in natural gas. A witness testified it is added to natural gas so that a gas leak might be smelled. SO3, a sulphur compound, is found naturally in salt cake, which is one of the components placed in the furnace. The chancellor made a finding of fact that the manufactured glass product contains .0013 to .003 integral parts SO3. It is undisputed that SO3 adds to the integrity and life of the finished glass product. Proof did not establish whether the trace amounts of SO3 in the finished product came from the natural gas or the salt cake.

Section 26-52-401(12)(B) of the Arkansas Code Annotated (Supp. 1993) provides in pertinent part:

> [P]roperty sold for use in manufacturing . . . can be classified as having been sold for the purposes of resale or the subject matter of resale *only in the event* the . . . property becomes a recognizable integral part of the manufactured . . . products.

*Id.* (emphasis added).

■ Arkansas Glass sought exemption for all of the natural gas used in the process of making glass. The facts showed that most of the natural gas used in the process was used for heating the furnace. The bulk of the natural gas used for heating did not become a recognizable and integral part of the product, and, since Arkansas Glass did not attempt to measure that part of the gas that became part of the product, its claim for exemption must fail under the language of the sale for resale provision quoted above.

■ In addition, we have said that trace amounts of a compound or ingredient found in the finished product do not establish that the compound or ingredient was purchased for resale. In *Hervey* v. *International Paper Co.*, 252 Ark. 913, 483 S.W.2d 199 (1972), a case in point, we wrote:

With respect to sulphur the appellees did introduce relevant testimony, but it actually refutes their contention. Various chemical compounds containing sulphur are used in the cooking liquor. The appellees' witness . . . testified that about 75% of the sulphur is recovered for reuse from the black liquor. Yet only minute traces of sulphur are to be found in Kraft paper. It necessarily follows that about 25% of the total sulphur in each batch of white liquor is consumed in the manufacturing process, presumably being discharged into the atmosphere or lost in some other way. *Thus it is certain that the sulphur is not resold. To the contrary, it is consumed in the process of manufacturing Kraft paper.*

*Id.* at 915, 483 S.W.2d at 201 (emphasis added).

The same is true in this case. The natural gas is not resold. To the contrary, it is consumed in the process of manufacturing glass.

■ The claim for exemption must fail for yet another reason. Appellant did not prove whether the compound contained in the glass product was contributed by the natural gas or by the salt cake, and the taxpayer must establish an exemption from taxation beyond a reasonable doubt. *C.B. Form Co.,* 316 Ark. at 25, 871 S.W.2d at 334.

■ Since we affirm the chancellor's ruling that Arkansas Glass is not entitled to an exemption from taxation on the natural gas, any argument about a refund based on an exemption from taxation on natural gas purchased during the post-audit period of March 1990 through July 1993, becomes moot. We need not address the moot issue. *Wright* v. *Keffer,* 319 Ark. 201, 890 S.W.2d 271 (1995).

Affirmed.