Cite as 2026 Ark. 104

# SUPREME COURT OF ARKANSAS

**No.** CV-25-16

| | |
|---|---|
| TYSON CHICKEN, INC.; TYSON MEXICAN ORIGINAL, INC.; AND TYSON POULTRY INC. <br><br> APPELLANTS <br><br><br> V. <br><br><br> JIM HUDSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE DEPARTMENT OF FINANCE AND ADMINISTRATION OF THE STATE OF ARKANSAS <br><br> APPELLEE | **Opinion Delivered:** June 4, 2026 <br><br> APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-23-2100] <br><br> HONORABLE JOHN C. THREET, JUDGE <br><br> <u>AFFIRMED</u>. |

**NICHOLAS J. BRONNI, Associate Justice**

"The issue is, what is chicken?"[1]  Sixty years after Judge Henry J. Friendly famously asked that question, we face the same query—albeit with a tax-law twist.

Three Tyson subsidiaries brought this case seeking a sales-tax refund.  They sell chicken and other food products and deliver their products on rented wooden pallets. Tyson claims those pallets are an integral part of the chicken that it sells and that, as such, its pallet rentals are exempt from sales taxes under Arkansas's sales-for-resale exemption. The Department of Finance and Administration rejected that claim, and the circuit court likewise concluded that the pallet rentals are not tax-exempt sales for resale.

---

[1]*Frigaliment Importing Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117 (S.D.N.Y. 1960) (Friendly, J.).

Ultimately, in reviewing that decision, we must decide what Tyson sells. In other words, is chicken just chicken (as the circuit court concluded)? Or is it chicken on a pallet (as Tyson argues)? We conclude chicken is just chicken—not chicken plus a pallet. So we affirm the circuit court's decision holding that Tyson's pallet rentals are not tax-exempt sales for resale and rejecting Tyson's refund claim.

*Factual and Procedural Background*

Tyson Chicken, Tyson Mexican Original, and Tyson Poultry—which for simplicity, we will just call Tyson—brought this case seeking a refund for sales taxes they paid on the rental of wooden shipping pallets. Tyson rents those pallets from Commonwealth Handling Equipment Pool, or CHEP for short. CHEP is the world's largest supplier of reusable pallets and containers. It rents reusable pallets to manufacturers, like Tyson, which then use those pallets to ship their products to distributors and others through the manufacturers' own supply chains. After delivery, those pallets are unloaded and returned to CHEP, which retains ownership of the pallets throughout the process. CHEP then inspects and, if necessary, repairs the pallets before renting them back out to manufacturers for further use. In a nutshell, then, the pallets are a mechanism for delivering a manufacturer's product—they are not part of the product itself.

Under Ark. Code Ann. § 26-52-301 (Supp. 2025), Tyson paid CHEP sales tax in connection with those rentals and CHEP remitted those payments to DFA. Tyson later concluded that it should not have paid sales tax on the rentals. It sought refunds for the taxes it paid for two periods: (1) between March 1, 2015, and December 31, 2017; and (2) between October 31, 2020, and October 31, 2021. Because CHEP had remitted those

2

payments to DFA, CHEP assigned its right to any refund to Tyson, allowing Tyson to request a refund directly and bypassing any need to involve CHEP. *See* Ark. Code Ann. § 26-21-109 (Repl. 2020); 006.05.06 Ark. Admin. Code § 005-GR-81.1; Arkansas Tax Form 2004-6. Tyson claimed that its pallet rentals were sales-tax-exempt "sales for resale" under Ark. Code Ann. § 26-52-401(12) because it used the pallets to deliver its products.

DFA denied Tyson's refund request. Tyson sought review in circuit court, which granted summary judgment in DFA's favor. Tyson appeals.

*Discussion*

The circuit court granted summary judgment in favor of DFA because Tyson could not meet its burden of proving entitlement to a sales-tax exemption under Ark. Code Ann. § 26-52-401(12). Broadly speaking, that provision exempts from sales taxes "proceeds derived from sales for resale." Ark. Code Ann. § 26-52-401(12)(A). The circuit court concluded Tyson's pallet rentals did not qualify and granted DFA's motion for summary judgment on Tyson's refund claim. We review that decision de novo. *Gates v. Hudson*, 2025 Ark. 48, at 5, 711 S.W.3d 142, 146. Conducting that review, we affirm.

1. We start as always in tax cases with statutory text. Beginning with the basics, Arkansas law imposes a "three percent" tax on "proceeds or gross receipts derived from all sales." Ark. Code Ann. § 26-52-301. That provision applies to any transaction that involves the transfer, rental, or lease of personal property in exchange for "valuable consideration." Ark. Code Ann. § 26-52-103(31)(A) (defining "sale"); *see also* Ark. Code Ann. § 26-52-103(31)(D) (setting forth special calculation procedures for leases and rentals). Tyson and

3

DFA both agree that—absent an exemption—Arkansas's three percent sales tax applies to rentals like those at issue here.

They disagree about whether Tyson's pallet rentals qualify for an exemption. The tax code provides numerous exemptions from the general sales tax, excepting everything from newspaper advertisements and transactions involving "the Poets' Roundtable of Arkansas" to "[a]ncillary services by a car wash operator" and electricity used in aluminum processing. *See* Ark Code Ann. § 26-52-401(13)(A) (newspaper advertisements); –401(9) (Poets' Roundtable of Arkansas); –401(41) (car wash); and –401(24) (aluminum processing). At issue here is Section 401(12)'s "sales for resale" exemption. That provision exempts from sales tax "proceeds derived from sales for resale to persons regularly engaged in the business of reselling the articles purchased." *Id*. § 26-52-401(12)(A). Or, put simply, that provision ensures that items that are merely resold—most typically by distributors, wholesalers, or retailers—are not taxed twice: once at the time of purchase by a reseller and then again when it is sold to an end consumer.

Yet that general provision does not automatically apply to all transactions that involve the transfer of previously sold items. Instead, Section 401(12)(B) imposes an additional requirement when an item is "sold for use in manufacturing, printing, compounding, processing, assembling, or preparing for sale." Ark. Code Ann. § 26-52-401(12)(B)(i). In that case, to qualify for an exemption, the purchased item must also "become[] a recognizable integral part of the manufactured, printed, compounded, processed, assembled, or prepared products." *Id*. Indeed, underscoring the point, another part of Section 401(12)(B) explains that "goods, wares, merchandise, and property" that do not ultimately

4

become part of the product itself are really purchased "for consumption or use" rather than resale. Ark. Code Ann. § 26-52-401(12)(B)(ii). And it is Section 401(12)(B)—rather than the general provision—that matters here because, as both parties concede, the pallets are used to "assemble[]" and "prepar[e] [products] for sale."

2. With that background in mind, we turn to Tyson's claim that the pallets are an integral part of the chicken and other food products that it sells. Tyson says that it sells and delivers pallets of chicken and that, consequently, the pallets are integral to the final packaged product that its customers—distributors, wholesalers, and retailers—receive. It is a creative argument, focused narrowly on the way Tyson markets and delivers its products to a specific class of buyers. But that is not the statute's focus. On the contrary, as discussed above, Section 401(12)(B) focuses on the actual product, providing an exemption only where an item "becomes a recognizable integral part of the . . . product" itself. *Id*. And wooden pallets do not meet that standard. They never become part of the chicken. Instead, they are a means of delivery.

Our prior cases reflect that distinction, explaining that to qualify for an exemption, an item must be "necessary to the completeness of the final manufactured product." *Glass Container Corp. v. Pledger*, 320 Ark. 10, 12, 894 S.W.2d 599, 600 (1995). So, for instance, we have previously held that chemicals that become part of produced paper are integral because they are part of the finished product. *Hervey v. Int'l Paper Co.*, 252 Ark. 913, 916, 483 S.W.2d 199, 201 (1972). Similarly, we have held that paper cups for fountain drinks and Coke bottles are integral because absent cups and bottles, it would be impossible to sell a beverage. *See Hervey v. S. Wooden Box*, 253 Ark. 290, 292–95, 486 S.W.2d, 65, 67–69

(1972). By contrast—and particularly relevant here—we have long held that wooden boxes containing Coke bottles, grocery bags, and other packaging materials used to deliver merchandise are not integral parts of the sold products. *See Hervey*, 253 Ark. at 293–94, 486 S.W.2d at 68 (wooden boxes used to transport bottled Coke that did not end up with consumer); *Dermott Grocery & Comm'n Co. v. Hardin*, 203 Ark. 446, 156 S.W.2d 882 (1941) (packaging materials); *Wiseman v. Ark. Wholesale Grocers' Ass'n*, 192 Ark. 313, 90 S.W.2d 987 (1936) (grocery bags). And that makes sense because the boxes, bags, and other packaging materials at issue in those cases were not essential to the product—but merely a means of convenient delivery.

Likewise, wooden pallets are not necessary to complete the chicken. They are merely a convenient way to market and deliver it. Unlike the bottles and cups that our prior cases held were integral because it would have been impossible to sell beverages without them, it is possible to sell chicken without wooden pallets. Indeed, the end consumer buys chicken, not chicken and a pallet. Thus, we conclude that the pallets are too far removed to be considered integral, and we affirm the circuit court's decision denying Tyson's refund claim.

*Conclusion*

Tyson sells chicken and other foods. It does not sell wooden pallets, no matter how it chooses to deliver its products. So to answer Judge Friendly's famous question, in this case, the chicken is chicken—not chicken and pallets.

Affirmed.

Special Justices CODY KEES and CORY COX join.

6

WOMACK, J., concurs without opinion.

HUDSON and WEBB, JJ., not participating.

*Wright, Lindsey & Jennings LLP*, by: *Michael A. Thompson*, for appellants.

*Taylor Duvall-Vaughan* and *Keith Linder*, Office of Revenue Legal Counsel, for appellee.