No. 95-2941

```
Vickie Jackson,                        *
                                       *
          Appellant,                   *
                                       *
     v.                                *
                                       *
Delta Special School District,         *
No. 2; Ronald Smead,                   *
individually and in his official*
capacity as Superintendent of          *
Delta Special School District          *
No. 2; Hollis Mankin,                  *
individually and in his official*      Appeal from the United States
capacity as a member of the            *  District Court for the
Board of Directors of Delta            *  Eastern District of Arkansas.
Special School District No. 2;         *
Linda Lee, individually and in         *
her official capacity as a             *
member of the Board of Directors*
of Delta Special School District*
No. 2; Jerry Don Wilson,               *
individually and in his official*
capacity as a member of the            *
Board of Directors of Delta            *
Special School District No. 2;         *
Cecil Simpson, individually and        *
in his official capacity as a          *
member of the Board of Directors*
of Delta Special School District*
No. 2; Mary Scales, individually*
and in her official capacity as        *
a member of the Board of               *
Directors of Delta Special             *
School District No. 2; Linda           *
Wargo, individually and in her         *
official capacity as a member of*
the Board of Directors of Delta        *
Special School District No. 2,         *
                                       *
          Appellees.                   *
```

Submitted:  February 15, 1996

Filed:  June 26, 1996

Before WOLLMAN, HEANEY, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

Vickie Jackson, principal of Delta Special School District No. 2 (Delta), brought this action alleging that her termination by Delta was in retaliation for her filing of a gender discrimination claim with the Equal Employment Opportunity Commission (EEOC).  After the jury found in her favor, the district court granted Delta's renewed motion for judgment as a matter of law.  Jackson appeals both this ruling and the district court's failure to order her reinstatement as school principal after the jury found that Delta violated the Arkansas Teacher Fair Dismissal Act (ATFDA), Ark. Code Ann. § 6-17-1501 (Michie 1993).  We affirm in part and reverse in part.

**I.**

Vickie Jackson was hired as the elementary school principal of Delta for the 1991-92 school year.  At the end of this school year, Delta's Superintendent of Schools, Mr. Gunn, left the school district, and Jackson applied for the position.  Delta did not interview Jackson for this position, and it hired Ronald Smead, who was to report for work on July 1, 1992.  At the request of superintendent Gunn, Jackson was promoted to principal of all grades from kindergarten through high school.

Jackson admitted that she was "upset" at not being interviewed for the superintendent's position.  In response, she carried on

what was described by the district court as a "campaign of vilification and the worst type of rumormongering and false witness against Ronald Smead." Order Granting Judgment N.O.V. at 6 (June 23, 1995). "This vendetta, consisting of the most derogatory charges imaginable," id., began shortly before Smead arrived and continued throughout the ensuing school year.

As noted by the district court, "[t]he stories spread about Smead were truly outrageous. The most serious was that he was a drug dealer." Id. at 7. Evelyn Beatty, Jackson's secretary, testified that Jackson, on more than one occasion, mentioned to Beatty and others that Smead was a drug dealer: "She told me that she had an inside source at the state police department and that he had told her that Mr. Smead was under investigation for drug trafficking." Tr. at 308. Beverly Morales, Smead's bookkeeper, confirmed that Jackson spread these rumors, noting that Jackson "said that she had a source in the state police and, according to this source, that Mr. Smead was dealing in drugs because cars would come up in his yard and not stay very long and leave. And as to that, he was dealing in drugs." Tr. at 296.

Another of Jackson's favorite rumors was that Smead was a womanizer. Edward Burnett, an employee of the school district, testified that, even before Smead took over as superintendent, Jackson was spreading such rumors: "she told me that where he had formerly worked that she had talked with a teacher or something and she had told her that he was a womanizer and was having an affair." Tr. at 273.

Not content with calling Smead a drug dealer and a womanizer, Jackson also spread rumors that Smead had a drinking problem and that "there was a DWI at one time." Tr. at 42. Jackson also mentioned to Morales and Beatty that Smead had financial problems in other districts with which he had been associated.

Nowhere in the 191 pages of Jackson's trial testimony does she ever deny spreading these rumors; at best she quibbles over the exact terminology she used. As the district court noted,

> She said she had never heard the word "womanizer" before, but ". . . [I] guess I could have said something . . ." [Tr. at 331]. She probably said "trouble with women" [Tr. at 338]. She admitted making derogatory remarks to Ms. Morales and Ms. Beatty [Tr. at 333]. She admitted telling the women Mr. Smead had "some problems with drugs over at Kingsland" but denied using the term "drug dealer" [Tr.at 333-34].

Order at 9. Jackson also admitted to telling her co-employees that Smead had a drinking problem that resulted in a D.W.I. charge. Tr. at 42, 170. Finally, when Jackson was asked during cross- examination if she had ever mentioned to her co-employees "[a]ny of the financial trouble we've talked about, drug dealing or whatever terms you used and trouble with women," Jackson responded, "Yes, sir, I mentioned them. I certainly did, yes." Tr. at 346.

Jackson's motive for spreading these rumors is clear: she was distraught at not receiving the superintendent position and so she "embarked on a vendetta to make life miserable for Smead." Order at 2. Morales testified that Jackson stated that the school district "hadn't treated her right" in not interviewing her for the superintendent's position and that "she [Jackson] could make everyone miserable," Tr. at 283, and that "the board had hired Mr. Smead knowing his background and that she [Jackson] could make a call to the newspapers and make it hard for everyone." Tr. at 287. On this, Jackson certainly kept her word.

Jackson succeeded in creating an intolerable atmosphere of tension at Delta. Beatty noted that Jackson's continued statements caused a problem at the school and affected Beatty's productivity. Beatty eventually relayed Jackson's comments to Smead because the comments "became such a problem" and "caused so much tension" and

because Jackson's co-employees "couldn't work with it."  Tr. at 306.
Morales confronted Jackson about the negative comments.  According to
Morales,

> [s]he [Jackson] would just come up to me or to anyone and, you
> know, just start talking, just start saying things about Mr.
> Smead. . . . And at that time I had, you know, was real busy in
> my job and I'd had my fill of it.  I got tired of listening to
> her.  I mean, I didn't ask to hear it.  I told her finally I
> was just tired of her shit.
>
> . . . .
>
> But I was mad; I was upset and I just, that's what I said.  I
> said I was tired of every breath that I heard from her being
> negative about Mr. Smead.  I said I was in the middle . . . and
> I was just sick of hearing about it.

Tr. at 284.  When asked if she considered Jackson's conduct to be
professional, Morales responded "no."

On January 4, 1993, Smead relieved Jackson of her disciplinary duties
regarding high school students and bus students.  Jackson complained to the
school board that this action constituted gender discrimination.  Although
there was evidence that discipline at the high school had suffered while
Jackson was in charge, the school board reinstated Jackson as chief
disciplinarian at its February 1993 meeting.  The board denied that Smead
had discriminated against Jackson.

On February 26, 1994, Jackson filed an EEOC charge claiming that
Smead's action constituted gender discrimination.  The EEOC chose not to
accept the case, instead issuing Jackson a right to sue letter.  Jackson
chose not to file a lawsuit on this allegation of discrimination.

In early March, Smead decided to recommend to the Delta school board
that it terminate Jackson.  Smead cited thirteen instances of

unprofessional conduct and fifteen instances of inefficiency and insubordination by Jackson during the previous year as grounds for the proposed dismissal.[1]

Before Jackson was terminated, she was afforded an opportunity to present her case to the school board. She was notified on April 27, 1993, that a hearing before the school board had been set for 8 p.m. on April 30, 1993. However, Jackson's attorney advised her that under the ATFDA only she could order a hearing, and thus she was under no obligation to attend the meeting set up by the school board. Jackson chose to not attend the meeting, at which the school board formally discharged her. At this meeting, the school board voted to pay Jackson her salary until the end of the contract year.

On May 3, 1993, Jackson's attorney sent a letter to the president of the Delta school board requesting an open hearing, but Jackson received no response to the letter.

On June 11, 1993, Jackson filed a second charge of discrimination with the EEOC, claiming that her termination was in retaliation for her filing of the February 1993 discrimination claim with the EEOC. Jackson received a right to sue letter from the EEOC. She brought this suit in federal district court, alleging that Delta, Smead, and the school board (1) violated her

---

[1]During trial, Jackson admitted that several incidents relied upon by Smead in recommending her termination did in fact occur. Jackson testified that she could not remember some of the other incidents, and as to a few, she testified that they did not occur.

Jackson's filing of the EEOC complaint was not listed as one of the reasons for termination. When asked at trial if Jackson's filing of the complaint was a factor in the termination, Smead twice stated that it was "not the sole reason"; however, in response to further questions, Smead stated that the filing of the complaint was not a factor in the termination.

procedural due process rights by terminating her and (2) retaliated against her for filing the gender discrimination claim with the EEOC in February of 1993. In a supplemental state law claim brought pursuant to 28 U.S.C. § 1367 (1994), Jackson alleged that Delta violated the ATFDA by not granting her a hearing after she requested it, thereby requiring her reinstatement.

The jury returned a verdict for Jackson. The jury found that: (1) Jackson was denied procedural due process; (2) Jackson would have been terminated even if she had received due process;[2] (3) Jackson's filing of the February 1993 EEOC complaint was a motivating factor in the defendant's decision to discharge her; (4) if Jackson had not filed the February 1993 EEOC complaint, she would not have been terminated; and (5) defendants failed to comply with the ATFDA. The jury awarded Jackson $185,000 in compensatory damages.[3]

The defendants filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial. The court granted judgment as a matter of law on the retaliation claim, holding that the jury's verdict was unsupported by the record. The district court noted that

> [i]n view of plaintiff's disloyalty to him [Smead], the slanderous statements made to his subordinates - that he was a drug dealer, problem drinker, womanizer and involved in financial difficulties, the superintendent had no choice but to ask the board to fire her. He would have been a fool to do otherwise.

---

[2]Because Jackson would have been terminated even had she received due process, the court awarded nominal damages of $1 only on this claim. See Brewer v. Chauvin, 938 F.2d 860, 862-64 (8th Cir. 1991) (en banc). This damages award has not been appealed.

[3]At oral argument, counsel for Jackson broke down the $185,000 award as follows: $100,000 as compensatory damages for the retaliatory discharge, and $85,000 as compensatory damages for the ATFDA violation.

Order at 10.  The court also granted, in the alternative, a new trial on this claim.

The district court agreed with the jury that the ATFDA had been violated, but, concluding that Jackson would have been terminated anyway, it awarded nominal damages of $1 and refused to order Jackson's reinstatement.

## II.

In reviewing the district court's grant of judgment as a matter of law, we apply the same standard as the district court.  This standard requires that we (1) resolve direct factual conflicts in favor of the nonmovant; (2) assume as true all facts supporting the nonmovant which the evidence tended to prove; (3) give the nonmovant the benefit of all reasonable inferences; and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions to be drawn. Dace v. ACF Indus., Inc., 722 F.2d 374, 375 (8th Cir. 1983).

In considering retaliatory discharge claims, we use the three-stage order of proof and presumptions governing discrimination cases in general. Schweiss v. Chrysler Motors Corp., 987 F.2d 548, 549 (8th Cir. 1993). Plaintiff must initially establish a prima facie case of retaliation by showing participation in a protected activity, subsequent adverse action by the employer, and a causal connection between the two.  Kobrin v. University of Minnesota, 34 F.3d 698, 704 (8th Cir. 1994).  Once a prima facie showing is made, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.  Id.

If the employer meets that burden, the presumption of retaliation raised by the prima facie showing disappears and we evaluate only whether Jackson presented evidence capable of proving that proffered reasons for termination were a pretext for

retaliation. See Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 777 (8th Cir. 1995). She can do this directly, "by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer," Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 256 (1981), or indirectly, "by showing that the employer's proffered explanation is unworthy of credence," id. Such indirect evidence, in conjunction with the prima facie case, merely permits, but does not require, the jury to conclude that Jackson has been the victim of unlawful retaliation. See St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2749 (1993); Hutson, 63 F.3d at 777.

The parties concede that Jackson made a prima facie showing that she was discharged in retaliation for filing the February 1993 EEOC complaint. The parties further agree that Delta offered a legitimate, nonretaliatory reason for the termination. Thus, we must examine only whether Jackson has made the third-stage showing that the proffered reasons for termination were a pretext for retaliation. We agree with the district court that Jackson has not met this burden.

There was overwhelming evidence adduced at trial that the main reason for Jackson's termination was her insubordination, her inefficiency, and the divisive atmosphere created by her actions at Delta, leading to the decreased productivity of her co-employees.

First, Jackson herself admitted that several of the incidents outlined in Smead's termination letter of April 9 did in fact occur. Second, Jackson admitted to spreading truly outrageous rumors about Smead, including that he was involved in drugs, was a womanizer, had a drinking problem, had financial problems, and was often absent from the school district. Her co-employees corroborated this testimony.

Jackson's comments were terribly disruptive at Delta. They

caused extreme tension at the school, and her co-employees, tired of listening to Jackson's vitriol, could not perform their duties. We agree with the district court that the overwhelming evidence adduced at trial demonstrates that Jackson was "a terribly disruptive influence at the school; as she threatened to do, she made life miserable for the employees with whom she had contact." Order at 13. "It would have been impossible for Mr. Smead to have carried on his duties when his principle subordinate spread the most vicious rumors behind his back to other employees of the district." Id.

Against the great weight of this evidence, Jackson persists in contending that she was discharged in retaliation for filing the February 1993 EEOC complaint. She points to three things evidencing that her discharge was retaliatory: (1) the timing of the termination; (2) a comment made by Smead, retracted moments later, that Jackson's filing of the EEOC complaint was "not the sole reason" for her termination; and (3) Delta's failure to comply with the ATFDA's remediation provision, Ark. Code Ann. § 6-17-1504, which requires that Jackson be made aware, in writing, that problems with her performance existed that could lead to her termination.

First, we are not troubled by the timing--Jackson had been spreading the slanderous rumors about Smead ever since Smead first became superintendent, and Smead had been detailing the instances of insubordination and incompetence long before Jackson ever filed the EEOC complaint. Second, the statement by Smead is ambiguous at best, and its importance is far overshadowed by the damaging admissions made by Jackson that she did actually engage in conduct justifying her termination. Finally, the failure to remediate, which in some situations may be evidence that a school district is out to "get" a teacher, is likewise so far overshadowed by Jackson's admissions as to hardly offer any evidence of pretext at all.

When the events surrounding her filing of the February 1993 EEOC complaint are viewed as a whole, it is clear that the school board did not harbor any retaliatory animus when it dismissed Jackson. When Jackson was removed from the post of chief disciplinarian, she first complained to the school board. What was the school board's response? As cogently analyzed by the district court,

> [t]he school board, based upon her complaint to it, restored her as the chief disciplinarian, overruling Mr. Smead. . . . At a meeting of the board in February, in response to the plaintiff's complaint of gender discrimination, the board restored her as chief disciplinarian. Therefore, the basis for the EEOC charge had disappeared. She denied any intention of filing a lawsuit based upon this charge. "No sir. That was just documentation. Something to show that something had taken place, that's all." One question immediately suggests itself as to the retaliation complaint. <u>Why would the board retaliate by firing her for making a complaint to the EEOC when they had agreed with her in February when she filed the same complaint with the board?</u> When she filed the retaliation complaint four months later in June, the board had restored her as chief disciplinarian several months before, back in February. . . . The board gave her satisfaction on her complaint. "I had no intention of filing a lawsuit." The EEOC found no basis for her February 23, 1993 complaint. She did not pursue a lawsuit on this charge which she had every legal right to do. Yet, four months after the February charge was filed, she claimed retaliation. <u>This allegation is patently pretextual. The jury's affirmative answer to Interrogatory No. 3 is utterly without any basis in the evidence</u>.

Order at 11-12 (emphasis added) (citations omitted).

We agree that the allegation of retaliatory discharge is "patently pretextual." Delta offered overwhelming evidence, including Jackson's own admissions that she spread slanderous, unsubstantiated rumors about superintendent Smead, that Jackson's discharge was not retaliatory. Given Jackson's comments, "the superintendent had no choice but to ask the board to fire her. He

would have been a fool to do otherwise." Id. at 10. Jackson's claim of retaliatory discharge fails.

## III.

Jackson next claims that the district court erred in failing to reinstate her and award her back pay after the jury found that her dismissal violated the ATFDA. Specifically, she notes that Delta's failure to comply with the ATFDA voids her dismissal and requires her reinstatement.[4]

The jury found that Delta failed to strictly comply with the ATFDA, and the district court did not disturb this conclusion upon Delta's motion for a renewed judgment as a matter of law. We agree with this finding. It is undisputed that Jackson requested a hearing on May 3, 1993, within the thirty-day window provided by the ATFDA. Delta did not offer Jackson a hearing as required. This violates the ATFDA and voids her termination.

Delta responds that it was not required to provide Jackson with a hearing after her request because it had earlier held a meeting on April 30, 1993, to discuss her termination. However, this hearing did not satisfy the requirements of the ATFDA. Even assuming that school districts are empowered under the statute to sua sponte hold hearings regarding terminations, the statute

---

[4]Under the ATFDA, a teacher may be discharged for any reason that is not arbitrary, capricious, or discriminatory. Ark. Code Ann. § 6-17-1503. However, before being discharged, the teacher must receive written notice of the superintendent's termination recommendation, including the grounds for the recommendation of termination. Ark. Code Ann. § 6-17-1507. Within thirty days of receiving such notice, the teacher may file a written request for a hearing before the school board. Ark. Code Ann. § 6-17-1509. The hearing shall take place not less than five days nor more than ten days after the written request has been served on the school board. Id. Failure to strictly comply with these notice and hearing provisions shall void the termination. Ark. Code Ann. § 6-17-1503.

-12-

mandates that the hearing be held between five days and ten days after notice of the meeting is given.  In this case, Jackson received notice of the April 30 meeting on April 27, an insufficient amount of time under the statute.  See Lester v. Mount Vernon-Enola Sch., 917 S.W.2d 540, 542 (Ark. 1996) (termination void because hearing held only four days after notice).[5]

At issue then is the relief to which Jackson is entitled.  We must first decide whether Jackson is entitled to reinstatement, with a concomitant award of back pay.  If Jackson is not entitled to reinstatement, we must decide if she is nevertheless entitled to any back pay due to the violation of the ATFDA.

We agree with the district court that reinstatement is not appropriate in this case.  The goal of the ATFDA is to ensure that a teacher receives a fair hearing before she is terminated.  The trial in this case met that goal--Jackson was granted an adversary hearing where she was able to present witnesses on her behalf and cross-examine Delta's witnesses.

At the conclusion of trial, the judge determined that Delta demonstrated, as a matter of law, that Jackson's termination was justified. As noted by the district court,

> [t]o reinstate this woman would be unthinkable, and her request for such remedy is hereby denied.  She was a terribly disruptive influence at the school; as she threatened to do, she made life miserable for the employees with whom she had contact.

Order at 13.  Because a hearing before the school board can offer Jackson no greater opportunity to be heard than did the judicial forum, Jackson's termination is valid and we will not order

---

[5]Delta also violated Ark. Code Ann. § 6-17-1504, because Jackson was not made aware, in writing, that problems with her performance existed that could lead to her termination.

-13-

reinstatement.

A more difficult issue is that of damages where reinstatement is not ordered. As noted above, Delta's failure to grant a hearing when requested by Jackson voids her termination and requires that she be rehired for the 1993-94 school year at the same salary and on the same terms as the previous year. See Western Grove Sch. Dist. v. Terry, 885 S.W.2d 300, 302-03 (Ark. 1994). Thus, at a minimum, she must receive back pay for this year. Id.

However, Arkansas law offers no clear answer as to whether a teacher terminated in violation of the ATFDA is entitled to back pay for years subsequent to the year immediately succeeding her termination. In Marion City Rural School District No. 1 v. Rastle, 576 S.W.2d 502 (Ark. 1979), a pre-ATFDA decision, a school district failed to give a teacher proper notice of termination before the 1975-76 and 1976-77 school years. However, the court held that the teacher was entitled to only one year of back pay because the notice violation went only to the year immediately following termination. Id. at 504.

On the other hand, in Western Grove School District v. Strain, 707 S.W.2d 306 (Ark. 1986), a teacher terminated without cause under the ATFDA was entitled to back pay from termination through reinstatement. Id. at 308. The court noted that, for a school teacher removed from her job without cause in violation of the ATFDA, "her contract was in abeyance during the pendency of the lawsuit [challenging the dismissal]." Id. The teacher was reinstated at the end of trial, entitling her to be "compensated for the period she was unemployed due to the actions of the school district." Id. The underlying rationale was that due to her reinstatement, the teacher should be considered an employee of the school district during the pendency of the lawsuit. As an employee during this period, she was entitled to compensation.

-14-

We believe that the best interpretation of <u>Strain</u> is that it applies only where reinstatement is ordered.[6]  We conclude, then, that where the termination is for cause, and reinstatement is not ordered, so that the violation of the ATFDA is procedural and not substantive, <u>Rastle</u>, and not <u>Strain</u>, guides our decision.

In the present case, Jackson was not reinstated at the conclusion of trial because her dismissal was with (good) cause.  Thus, unlike in <u>Strain</u>, we do not consider Jackson to have been an employee at Delta up until the time of the lawsuit.  Under <u>Rastle</u>, the effect of the procedural violation of the ATFDA in April 1993 goes to the succeeding school year only.  Thus, Jackson's employment contract should be extended for only one year, and she is entitled to back pay only for this period.[7]

We note that the result reached in part III of this opinion is an unfortunate consequence of the ATFDA.  Although we feel that any award to Jackson in this case is undeserved, we are compelled by Arkansas law to award one year's back pay to Jackson.

---

[6]In <u>Strain</u>, the award of two years' back pay was not predicated solely upon a violation of the ATFDA, but rather on the termination being without cause and on a subsequent reinstatement of the teacher.  <u>See</u> <u>Strain</u>, 707 S.W.2d at 308; <u>see also</u> <u>Leola Sch. Dist. v. McMahan</u>, 712 S.W.2d 903, 908 (Ark. 1986) (noting that result in <u>Strain</u> predicated on reinstatement of teacher).

[7]The dissent states that reinstatement plus three years' back pay is the only available remedy for the school board's violation of the ATFDA.  We disagree.  Under Arkansas law, courts must give statutes a reasonable construction, not an absurd one.  <u>See</u> <u>Federal Express Corp. v. Skelton</u>, 578 S.W.2d 1, 9 (Ark. banc 1979) (quoting <u>Hervey v. Southern Wood Box, Inc.</u>, 483 S.W.2d 65, 69 (1972)).  Although reinstatement may not be denied solely because it would cause "hard feelings," <u>see</u> <u>Leola Sch. Dist. v. McMahan</u>, 712 S.W.2d 903, 908 (Ark. 1986), where reinstatement would be not only disruptive but also destructive of the learning environment, we would not interpret the statute as requiring that remedy.

## IV.

We agree with the district court that Jackson's discharge from Delta was not in retaliation for her filing the EEOC complaint. We further agree that reinstatement is not appropriate in this case, although we do conclude that Jackson is entitled to one year of back pay to remedy the violation of the ATFDA. Accordingly, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for a determination of the value of the salary and other benefits Jackson would have received for the 1993-94 school year.[8]

HEANEY, Circuit Judge, concurring in part and dissenting in part.

With respect to whether Jackson was entitled to reinstatement, as discussed in Part III of the majority opinion, I dissent. Arkansas law on this point is quite clear: a termination that does not strictly comply with the procedural requirements of the Teacher Fair Dismissal Act of 1983, Ark. Code Ann. §§ 6-17-1501-6-17-1510 (Michie 1993) (Fair Dismissal Act), is void. As such, reinstatement and back pay are the appropriate remedies. I think it worth reminding that this issue is before this court pursuant to our supplemental jurisdiction, 28 U.S.C. § 1367 (1994). Accordingly, we must interpret this question of state law as would Arkansas state courts. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966).

Following Arkansas state court decisions holding that substantial compliance with notice requirements was sufficient, see, e.g., Murray v. Altheimer-Sherrill Pub. Sch., 743 S.W.2d 789

---

[8]Delta moved to strike Jackson's Reply Brief Addendum, on the grounds that the material was not in the district court record and that it dealt with issues not previously raised on appeal. We deny this motion, for the material was before the district judge and is relevant to issues raised by Delta in its brief.

(Ark. 1988), the Arkansas legislature amended the Fair Dismissal Act as follows:

> A nonrenewal, termination, suspension, or other disciplinary action by a school district <u>shall be void</u> unless the school district strictly complies with all provisions of this subchapter and the school district's applicable personnel policies.

1989 Ark. Acts 625, §1 (amending Ark. Code Ann. § 6-17-1503). As the majority concedes, the School District did not comply with requirements imposed by the Fair Dismissal Act. The dismissal, therefore, is void. If Jackson's termination is void, she has not been terminated and should be reinstated.

The majority rejects reinstatement as the appropriate remedy. It argues that the "goal of the [Fair Dismissal Act] is to ensure that a teacher receives a fair hearing before she is terminated. The trial in this case met that goal . . . ." Slip op. at 13. In effect, the majority holds that a trial is a sufficient substitute for the statutorily-established dismissal procedures. This assertion is contradicted by the clear statutory language employed by the Fair Dismissal Act.

Moreover, the majority's difficulty with the question of back pay belies the untenability of its position regarding reinstatement. After rejecting reinstatement, the majority concludes that under <u>Marion City Rural Sch. Dist. No. 1 v. Rastle</u>, 576 S.W.2d 502 (Ark. 1979), the effect of the procedural violation of the Fair Dismissal Act in April 1993 goes only to the succeeding school year. Slip op. at 15. The flaw with this assertion is that <u>Rastle</u>, the only authority cited by the majority for its holding, did not interpret the Fair Dismissal Act, which was enacted <u>after</u> that decision. In subsequent cases in which school districts have argued that damages should be limited to the one year following a Fair Dismissal Act violation, the Arkansas Supreme Court has been

perfectly clear on the issue of <u>Rastle</u>'s continued viability: "Reliance on <u>Rastle</u> is misplaced, since the statutory law governing teaching contracts had been changed by the legislature . . . ." <u>Western Grove Sch. Dist. v. Strain</u>, 707 S.W.2d 306, 308 (Ark. 1986). The majority, however, ignores this instruction and the fact that <u>Rastle</u> did not interpret the relevant statute. Instead, it argues that the violation in this case, which consists of a failure to comply with the Fair Dismissal Act's procedural requirements, is more analogous to <u>Rastle</u> than to <u>Strain</u> because <u>Strain</u> involved a termination that violated the Act's "with cause" requirement. This distinction simply does not comport with the statutory language, which flatly states that a termination shall be void "unless the school district complies <u>with all provisions</u> of this subchapter." Ark. Code Ann. § 6-17-1503 (emphasis added). Even if the statutory language were ambiguous, the decisions of Arkansas courts interpreting it are not. The Arkansas Supreme Court has held that reinstatement and back pay are appropriate remedies for notice violations of the Fair Dismissal Act. <u>See</u> <u>Western Grove Sch. Dist. v. Terry</u>, 885 S.W.2d 300, 300 (Ark. 1994). We are bound to do so as well.

The majority suggests that a reasonable construction of the statute would not require reinstatement where its impact would be "destructive of the learning environment." Slip op. at 15 n.7. I share the majority's concern for the learning environment, but the potential disruption represented by reinstating the plaintiff in this case is no different than any other Fair Dismissal Act case, which by definition involves a disciplinary action. The Arkansas Supreme Court has explicitly rejected this argument as a basis upon which reinstatement can be denied:

> [T]he appellant maintains that a court should not grant reinstatement unless the return of the given teacher to a school's environment will not cause unnecessary disruption because of ensuing feelings. The appellant has cited no authority for this proposition.

> Any time a school board is forced to reinstate a teacher it has dismissed, hard feelings may result. To refuse reinstatement on that basis would allow the board to succeed in its [illegal action].

Leola Sch. Dist. v. McMahan, 712 S.W.2d 903, 908 (Ark. 1986). The majority's attempt to distinguish this same case from the potential disruption here is simply not supported. Like the school board in Leola, the majority can cite no authority for its "reasonable interpretation."

One wonders whether the majority's interpretation of Arkansas law is not driven by its conclusion that "any award to Jackson in this case is undeserved . . . ." Slip op. at 15. It must be recognized, however, that the school district's own conduct has raised the stakes of this suit: rather than acknowledging its failure to comply with a simple procedure and then correcting that error, it chose to pursue a course of litigation. As a result, the period of back pay at issue is three years, instead of just one. Although I cannot defend Jackson's conduct, the Arkansas General Assembly has gone to considerable efforts to balance the competing interests of school district hiring flexibility and employee protection. Few protections have been afforded school district employees, but those that have been provided are to be strictly respected. However unjust the result of that balance may seem in this instance, we must recognize that there are larger issues at stake than the present case. I am confident that were this court to award reinstatement, in the future, school districts would go to greater lengths to comply with state law. Clearly, this was the intent of the legislature. The decision of the majority today not only ignores unambiguous statutory language and judicial interpretation, its strained effort to navigate away from the clearly-marked channels of state law frustrates the very purpose of the Arkansas legislature's 1989 amendment.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.