The Honorable Mac Dodson, Commissioner Arkansas Securities Department Heritage West Building, Suite 300 201 E. Markham Little Rock, Arkansas 72201-1692
Dear Commissioner Dodson:
This official Attorney General opinion is rendered in response to your recent request that I reconsider the conclusions reached in Opinion No.96-357, in light of new information. You have also presented an additional question that was not addressed in Opinion No. 96-357.
Because the questions that you have presented require discussion of A.C.A. § 23-35-401(b)(1) and (c), I will begin by setting forth the provisions of those sections of the statute. A.C.A. § 23-35-401(b)(1) and (c) state:
 (b)(1) Credit union organizations, other than central credit unions, shall be limited to:
(A) Groups having a common bond of occupation;
(B) Associations;
 (C) Residents within a well-defined neighborhood, community, or rural district;
 (D) Employees of a common employer, or an affiliate of a subsidiary of a common employer;
 (E) Members of a bona fide fraternal, religious, cooperative, labor, rural, educational, or similar organization; and
 (F) Members of the immediate family of such persons. "Members of the immediate family" shall include the wife, husband, children, parents, grandparents, and grandchildren of a member.
* * *
 (c) Membership in credit unions organized as central credit unions shall be limited to:
 (1) Credit unions organized under this chapter and federally chartered credit unions located in Arkansas;
 (2) A member of a credit union organized under this chapter or a federally chartered credit union located in Arkansas, if the credit union of which he is a member agrees to such membership and will provide an affidavit that at the time the member applies for membership in a central credit union the member has:
 (A) Reached the loan limit at his own credit union, and the credit union of which he is a member will substantiate in writing the member's loan credibility under such rules and forms as the supervisor shall prescribe; or
(B) Reached the maximum share limit at his own credit union; or
 (C) Reached the maximum share limit at his own credit union which is covered by life savings insurance, and the central credit union also provides life savings insurance;
 (3) With the approval of the State Credit Union Supervisor, employees of an employer with insufficient employees to form and conduct the affairs of a separate credit union and persons in the field of membership of liquidating credit unions and the immediate families of those persons.
 (A) In making his determination under this subsection, the State Credit Union Supervisor may disregard the common bond requirements of this chapter if he finds that the affiliation would benefit the members and be consistent with the purposes of this chapter.
 (B) If the membership of a liquidating credit union is seeking to merge with a central credit union under the provisions of subdivision (c)(3) of this section, all provisions of 23-35-701 shall apply except for the common bond requirements.
 (C) Each employer or liquidating credit union whose employees or members are approved as members of a central credit union shall be specifically named in the common bond section of the bylaws;
(4) Employees of the credit union;
 (5) Current members of the credit union if it is converting to a central credit union; and
(6) Employees of the Arkansas Credit Union League.
A.C.A. § 23-35-401(b)(1) and (c).
In Opinion No. 96-357, I reached the following conclusions:
 (1) That the provisions of A.C.A. § 23-35-401(b)(1)(A) do not permit a field of membership including employees of employers who are not involved in the same occupation; see Op. Att'y Gen. No. 96-357, Question 1;
 (2) That the provisions of A.C.A. § 23-35-401(b)(1)(D) allows a multi-occupation field of membership if that membership is based upon employment by employers who are affiliates or who share a parent/subsidiary relationship; see Op. Att'y Gen. No. 96-357, Question 1;
 (3) That no one credit union can base its field of membership on a choice of more than one of the classifications set forth in A.C.A. § 23-35-401(b)(1). Rather, each credit union must base its membership on at least one of the alternatives that are listed in that section; see
Op. Att'y Gen. No. 96-357, Question 2.
See generally Op. Att'y Gen. No. 96-357.
The questions that you have presented were actually formulated by Mr. Richard Downing, who represents the Arkansas Credit Union League, and were submitted by you to my office at Mr. Downing's request.
The questions are summarized as follows:
 (1) Please reconsider Conclusion No. 1, above (from Opinion No. 96-357, Question 1), in light of the fact that the language of A.C.A. § 23-35-401(b)(1)(A) refers to "Groups [plural] having a common bond of occupation," whereas the language of A.C.A. § 23-35-401(b)(1)(D) refers to "employees of a common employer . . .", thus indicating that Section (b)(1)(A), on the one hand, refers to groups of employees working for different employers, while Section (b)(1)(D), on the other hand, refers to employees of one employer. Please also consider the holding of the Court of Appeals of Michigan in Casazza v. Dept. of Commerce, 134 Mich. App. 249, 350 N.W.2d 855 (1984) (permitting field of membership consisting of groups of employees of more than one employer).
 (2) Please reconsider Conclusion No. 3, above (from Opinion No. 96-357, Question 2), in light of the holding of the Supreme Judicial Court of Maine in Maine Banking Association v. Bureau of Banking, 684 A.2d 1304 (Me. 1996).
 (3) Can a field of membership comprised of more than one employer or group be the basis for the formation of a "central credit union," as that phrase is defined in A.C.A. § 23-35-401(c)?
RESPONSE
Question 1 — Please reconsider Conclusion No. 1 above, (from Opinion No.96-357, Question 1), in light of the fact that the language of A.C.A. §23-35-401(b)(1)(A) refers to "Groups [plural] having a common bond ofoccupation," whereas the language of A.C.A. § 23-35-401(b)(1)(D) refersto "employees of a common employer . . .", thus indicating that Section(b)(1)(A), on the one hand, refers to groups of employees working fordifferent employers, while Section (b)(1)(D), on the other hand, refersto employees of one employer. Please also consider the holding of theCourt of Appeals of Michigan in Casazza v. Dept. of Commerce,134 Mich. App. 249, 350 N.W.2d 855 (1984) (permitting field of membershipconsisting of groups of employees of more than one employer).
This question appears to assume that I concluded in Opinion No. 96-357
that A.C.A. § 23-35-401(b)(1)(A) requires a field of membership comprised of the employees of a single employer. That was not my conclusion. Indeed, my conclusion is entirely consistent with the interpretation suggested by this question. That is, I only concluded in Opinion No.96-357 that under Section (b)(1)(A), the field of membership must be comprised of employees who all work for employers who are engaged in the same occupation. My reading of Section (b)(1)(A) in Opinion No. 96-357
was plainly broad enough to permit a field of membership consisting of persons working for different employers, provided that the employers are all engaged in the same occupation. Therefore, my conclusion in Opinion No. 96-357 was, in fact, based upon a reading of Section (b)(1)(A) that recognizes the plurality of the term "groups".
Opinion No. 96-357 should not be interpreted to mean that employees of employers who are not engaged in the same occupation but who are, themselves, engaged in the same occupation, could not be members of the same credit union under the provisions of Section (b)(1)(A). On the contrary, it is my opinion that A.C.A. § 23-35-401(b)(1)(A) permits a field of membership including either: (1) employees of employers who are engaged in the same occupation, even if the employees work for different employers; or (2) employees who are engaged in the same occupation, even if they have different employers whose ultimate occupations are different. Both of these bases for the formulation of a field of membership reflect the "common bond of occupation" that is required by Section (b)(1)(A). (Both also allow memberships comprised of employees of different employers.) This modified conclusion is based upon the policy reasons for the common bond requirement that are discussed in Opinion96-357. See Op. Att'y Gen. No. 96-357 at pp. 4-5.
It is my understanding that it has been suggested that a recognition of the plurality of the term "groups" in the phrase "Groups [plural] having a common bond of occupation" (see A.C.A. § 23-35-401(b)(1)(A)) would require an interpretation of that phrase under which a credit union could admit various groups which had no common bond of occupation between them, as long as there was a common bond of occupation within each group.
To the extent that Question No. 1 may be suggesting such an interpretation, I must reject the suggestion. Indeed, the very plurality of the term "groups" requires a different interpretation. While it is true that the plurality of the term allows the admission of various otherwise-unrelated groups, those various groups must share the characteristic of a common bond of occupation. This is so because the phrase "having a common bond of occupation" modifies the term "groups," rather than each individual group. The language of the statute gives no indication whatsoever that the phrase "having a common bond of occupation" should modify each individual group admitted. Such an interpretation would be appropriate, for example, if the statute said "Groups, each having a common bond of occupation." The statute makes no such indication. There is no language intervening between the term "groups" and the phrase "having a common bond of occupation" to indicate that the commonality requirement applies only within each group. Rather, the language of the statute, as written, indicates that the commonality must exist between all groups admitted to the credit union.
This interpretation is consistent with the other subdivisions of A.C.A. § 23-35-401(b)(1). All of the other subdivisions describe bases for membership under which the commonly-shared feature extends to all members admitted under that subdivision. See A.C.A. § 23-35-401(b)(1)(B) — (E).
The provisions of A.C.A. § 23-35-401(b)(1)(A) are unambiguous in their requirement of a common bond of occupation. I therefore conclude that a field of membership that does not reflect some common bond of occupation (either a bond between the groups admitted or a bond between the individuals admitted) is not permissible under Section (b)(1)(A).
Moreover, the holding in Casazza v. Dept. of Commerce,134 Mich. App. 249, 350 N.W.2d 855 (1984) does not, in my opinion, provide authority for a different interpretation of Arkansas' statute. TheCasazza decision is largely inapposite to the question that has been posed. In that case, the Michigan Court of Appeals upheld a decision to expand a credit union's field of membership to include employees of certain specified types of employers, even though the employers were not engaged in the same occupation. That decision does not provide guidance in interpreting the Arkansas statute, because the Michigan statute that was at issue in that case differed substantially from Arkansas' statute, and stated the "common bond" requirement much more broadly than does Arkansas' statute. The Michigan court found that the common bond requirement of the Michigan statute was met by other qualifications that were acceptable under that statute as constituting a common bond, such as geographical proximity.
For these reasons, I must reject an interpretation of A.C.A. §23-35-401(b)(1)(A) which would allow a field of membership that includes employees who are neither engaged in the same occupation, nor are employed by employers who are engaged in the same occupation. Rather, as explained above, I interpret Section (b)(1)(A) to allow a field of membership including either: (1) employees who are engaged in the same occupation; or (2) employees who work for employers who are engaged in the same occupation.
I must also point out, as I did in Opinion No. 96-357, that fields of membership comprised of employees engaged in different occupations and working for employers engaged in different occupations can be formed under the authority of A.C.A. § 23-25-401(b)(1)(B), (C), or (E).
Finally, I point out two other relavent matters. First, the phrase "common bond of occupation," as used in Section (b)(1)(A) has traditionally been given a broad interpretation which does not require that occupations be strictly identical. This broad interpretation of the phrase allows credit unions considerable leeway in formulating a basis for membership under Section (b)(a)(A). Second, the Commissioner is given wide discretion in the interpretation of matters within his jurisdiction, such as that which you have raised. The Commissioner's interpretation of such matters will be accorded substantial weight. SeePledger v. C.B. Form Co., 316 Ark. 22, 871 S.W.2d 333 (1994); Allen v.Ingalls, 182 Ark. 991, 33 S.W.2d 1099 (1930).
Question 2 — Please reconsider Conclusion No. 3, above (from Opinion No.96-357, Question 2), in light of the holding of the Supreme JudicialCourt of Maine in Maine Banking Association v. Bureau of Banking,684 A.2d 1304 (Me. 1996).
It is my opinion that the holding of the Supreme Judicial Court of Maine in Maine Banking Association v. Bureau of Banking, 684 A.2d 1304 (Me. 1996) does not compel a different conclusion than the one that is set forth above as Conclusion No. 3, from Opinion No. 96-357.
The Maine Banking Association case was nothing more than a cursory review by the Maine court of an administrative decision approving the expansion of a field of membership to include persons who lived or worked in a specified geographical location. The Maine statute allowed fields of membership based on residence within the same geographical location, or employment by employers located within the same geographical location. The Superintendent of the Bureau of Banking authorized the expanded field of membership. The Maine Supreme Judicial Court affirmed the authorization, applying the extremely deferent standard of review that is normally accorded to administrative agencies. Therefore, the court did not engage in an analysis of the Maine statute in question. Rather, it simply held that the Superintendent could have found, on the basis of the evidence presented, that qualification under one of the geographic categories was equal to qualification under the other geographical category. The court did not explain its meaning; however, it is clear that the commonality feature that is the policy basis for limited fields of membership was present in that case. The commonality feature would not necessarily be present in any given combination of the alternative bases for membership that are set forth in A.C.A. § 23-35-401(b)(1).
The absence of this commonality feature is the danger that is to be avoided by my interpretation of A.C.A. § 23-35-401(b)(1), as stated in Conclusion No. 3, above, from Opinion No. 96-357. The authorities cited in support of that interpretation are set forth on pages 4-5 of Opinion No. 96-357. The Maine Banking Association case is not at odds with those authorities; indeed, it is quite consistent with the policy reasoning described therein. That decision, therefore, does not convince me that a different conclusion should be reached.
I therefore reiterate my conclusion that no one credit union can base its field of membership on a choice of more than one of the classifications set forth in A.C.A. § 23-35-401(b)(1). Rather, each credit union must base its field of membership on at least one of the alternatives that are listed in that section.
Finally, I must point out that I am not unaware of the ambiguities and difficulties that arise out of the provisions of Arkansas' credit union membership requirements, in light of their apparent obsolescence and the significantly altered climate currently surrounding financial institutions. However, as the Casazza court, supra, stated: "[T]he answers appear to rest with the legislature." Casazza,134 Mich. App. at 256.
Question 3 — Can a field of membership comprised of more than oneemployer or group be the basis for the formation of a "central creditunion," as that phrase is defined in A.C.A. § 23-35-401(c)?[1]
It is my opinion that a field of membership comprised of more than one employer or group can be the basis for the formation of a "central credit union," as that phrase is defined in A.C.A. § 23-35-401(c) — provided that all stated qualifications are met.
Two features of A.C.A. § 23-35-401(c) lead me to this conclusion.
First, the list of acceptable members in central credit unions, as set forth in A.C.A. § 23-35-401(c), is so broad and includes such a wide array of possible members that it inherently must include different groups and different employers. For example, under Section (c)(2), both a teacher and a telephone company employee could conceivably become members of the same central credit union.
Second, the provisions of A.C.A. § 23-35-401(c)(3) explicitly waive the "common bond" requirement in certain instances.
Therefore, on the basis of the plain language of A.C.A. § 23-35-401(c), I must conclude that a field of membership comprised of more than one employer or group can be the basis for the formation of a "central credit union" under that section — provided that all stated qualifications (such as loan limitations and approval requirements) are met.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh
[1] The request for Opinion No. 96-357 expressly limited its inquiry to the provisions of A.C.A. § 23-35-401(b)(1), which explicitly exclude "central credit unions." It was for this reason that Opinion No. 96-357
did not address the subject of central credit unions.