The Honorable Mike Kenney State Representative 1005 Raintree Lane Siloam Springs, AR 72761-8268
Dear Representative Kenney:
I am writing in response to your request for my opinion on various questions arising from the following reported facts:
 I have been made aware that the Siloam Springs School District applied for state participation in the Transitional Academic Facilities Program and was denied for certain projects. It is my understanding that the Siloam Springs School District has requested an appeal of that decision. I am writing to seek your opinion on the application of Act 2206 of 2005, codified at Arkansas Code Annotated § 6-20-2506(a) and (c)(1).
Arkansas Code Annotated § 6-20-2506(a) provides:
 "(a) There is established the Transitional Academic Facilities Program under which the Division of Public School Academic Facilities and Transportation shall
provide state financial participation based on a school district's academic facilities wealth index in the form of reimbursement to a school district for eligible new construction projects for which debt is incurred or funds are spent after January 1, 2005 and on or before June 30, 2006." (emphasis supplied)
 The Siloam Springs School District sold bonds on December 1, 2004. They did not spend any of the money received from the sale of these bonds until after January 1, 2005 and will spend the bulk of the money received from the sale of the bonds on new construction before June 30, 2006.
 It seems to me that because all monies spent on the new construction projects will be spent after January 1, 2005 and before June 30, 2006, the school district is eligible to participate in the Transitional Academic Facilities Program.
These circumstances have prompted you to pose the following questions:
 1. Does Act 2206 [of 2005] specify that in order to be eligible for state financial participation funds spent between January 1, 2005 and June 30, 2006 cannot be from bonds issued prior to January 1, 2005?
 2. Does Act 2206 contain any language in any section that specifically excludes districts from qualifying for both bonded debt assistance and Transitional Academic Facilities Program funding?
 3. If your answer to the above questions is no, does Arkansas law permit the Public School Academic Facilities and Transportation Commission or the Department of Education or the Arkansas Legislative Council to approve rules and regulations which exceed or expand upon the language contained in the enabling legislation? In other words, if Act 2206 does not preclude a school district from qualifying for both bonded debt assistance and Transitional Academic Facilities Program funding and if Act 2206 does not preclude eligibility for reimbursement for funds spent after January 1, 2005 and on or before June 30, 2006, may rules and regulations be adopted which do establish those preclusions?
 4. Does Act 2206 of 2005 codified as Arkansas Code Annotated § 6-20-2502 preclude participation by the State in land acquisitions? For example, Arkansas Code Annotated § 6-20-2502(10)(v) [sic: "-2502(10)(A)"] provides that new construction includes additions to existing academic facilities and new academic facilities. Arkansas Code Annotated § 6-20-2502(1)(a) defines "academic facility" to mean a building or space, including related areas such as physical plant or grounds, where students receive instruction that is an integral part of an adequate education as described in § 6-20-2302. Does the reference to "physical plant or grounds" include the site for the new construction?
RESPONSE
As a matter of policy, I am unable to answer your first question because it is reportedly at issue in a pending administrative appeal. With respect to your second question, nothing in Act 2206 of 2005 would preclude a school district, under appropriate circumstances, from qualifying for both bonded debt assistance and transitional academic facilities program funding. However, you have specifically asked about a situation in which bonds issued before January 1, 2005 are used to finance new construction in a school district between January 1, 2005 and June 30, 2006. The Siloam Springs School District apparently feels it should be eligible for both varieties of funding under these circumstances pursuant to Act 2206. The state reportedly disagrees. Given the pendency of an administrative appeal of this matter, I can only define the issue giving rise to this disagreement and forbear venturing an opinion. With respect to your third question, A.C.A. § 6-20-2512 authorizes the Commission on Public School Academic Facilities to adopt regulations "which shall promote the intent and purposes of this subchapter. . . ." As a general proposition, then, the Commission may not adopt regulations contrary to the legislature's intent in enacting the Arkansas Public School Academic Facilities Funding Act. I am not situated to opine on whether the Commission has in fact adopted any such regulations, and, even if I were so situated, I would decline to opine on this question in light of the pendency of an administrative appeal in which the application both of the Act and of Commission regulations appears to be at issue. With respect to your fourth question, A.C.A. § 6-20-2502(10)(A), which was included in the Code pursuant to Act 2206, defines "new construction" exclusively in terms of "improvements" to real estate, not in terms of a school district's acquiring additional real estate. Accordingly, I do not believe Act 2206 authorizes participation by the state in a school district's land acquisitions.
Question 1: Does Act 2206 [of 2005] specify that in order to beeligible for state financial participation funds spent betweenJanuary 1, 2005 and June 30, 2006 cannot be from bonds issuedprior to January 1, 2005?
I regret to say that I cannot answer this question, which you report is the subject of an administrative appeal. This office has followed a long-standing policy against issuing opinions on matters that are the subject of pending litigation. This policy has consistently been applied to matters pending before administrative agencies as well as before the courts. See,e.g., Ark. Ops. Att'y Gen. Nos. 99-139; 97-329; 97-105; 96-137; 92-360 and 90-114. The referenced administrative agency will provide an answer to your question, with a right of appeal to the courts.
Question 2: Does Act 2206 contain any language in any sectionthat specifically excludes districts from qualifying for bothbonded debt assistance and Transitional Academic FacilitiesProgram funding?
In my opinion, under certain circumstances to be discussed below, a school district might clearly qualify under Act 2206 of 2005, the Arkansas Public School Academic Facilities Funding Act (the "Act"), for both bonded debt assistance and transitional academic facilities program funding. However, given the pendency of an administrative appeal on the issue, I cannot address whether both types of assistance might be available under the specific circumstances detailed in your factual recitation.
The Act added title 6, chapter 20, subchapter 25 to the Arkansas Code. The provisions of the Act dealing with bonded debt assistance, codified as A.C.A. § 6-20-2503, set forth a complicated formula for determining amounts to be provided school districts by the state "for the purpose of retiring outstanding bonded indebtedness in existence as of January 1, 2005." A.C.A. § 6-2-2503(b)(1). The provisions of the Act dealing with the Transitional Academic Facilities Program, codified as A.C.A. §6-20-2506, set forth a complicated formula for calculating state "reimbursement to a school district for eligible new construction projects for which debt is incurred or funds are spent after January 1, 2005, and on or before June 30, 2006." A.C.A. §6-20-2506(a).
In my opinion, the Act is analytically clean with respect to a situation where a school district, on the one hand, both incurs and expends the proceeds of bonded indebtedness prior to January 1, 2005 and, on the other, both incurs and expends the proceeds of different bonded indebtedness for new construction after January 1, 2005 and on or before June 30, 2006. Under these circumstances, I believe an otherwise qualifying district might be granted both bonded debt assistance on the older obligation pursuant to A.C.A. § 6-20-2503 and transitional academic facilities program funding on the newer obligation pursuant to A.C.A. § 6-20-2506. The district might further seek transitional academic facilities program funding pursuant to A.C.A. § 6-2-2506 to reimburse it for expenditures for new construction during this period not financed by bond proceeds.
However, the situation described in your factual recitation appears to differ from this hypothetical in that only one bond issue and one set of expenditures is involved. Specifically, you report that the Siloam Springs School District sold bonds on December 1, 2004, spending none of the proceeds before January 1, 2005 and intending to spend "the bulk of the money received from the sale of the bonds on new construction before June 30, 2006." I gather that the Siloam Springs School District applied for both bonded debt assistance and transitional academic facilities program funding with respect to this bonded indebtedness — a position the state has apparently interpreted as inconsistent with the Act.
As noted above, I cannot opine on which side of this argument strikes me as meritorious. I assume this matter will be addressed directly on administrative appeal, and I am not inclined possibly to influence that process by issuing a purely advisory opinion.
Question 3: If your answer to the above questions is no, doesArkansas law permit the Public School Academic Facilities andTransportation Commission or the Department of Education or theArkansas Legislative Council to approve rules and regulationswhich exceed or expand upon the language contained in theenabling legislation? In other words, if Act 2206 does notpreclude a school district from qualifying for both bonded debtassistance and Transitional Academic Facilities Program fundingand if Act 2206 does not preclude eligibility for reimbursementfor funds spent after January 1, 2005 and on or before June 30,2006, may rules and regulations be adopted which do establishthose preclusions?
With respect to the scope of regulatory authority, A.C.A. §6-20-2512 provides:
 The Commission on Public School Academic Facilities and Transportation shall promulgate rules necessary to administer this subchapter, which shall promote the intent and purposes of this subchapter and assure the prudent and resourceful expenditure of state funds with regard to public school academic facilities throughout the state.
In my opinion, this grant of regulatory authority is circumscribed by the condition that its exercise "promote the intent and purposes of this subchapter." As a general proposition, this condition would preclude the Commission from enacting regulations that would frustrate a legislative intention to make state funding available both to help retire pre-January 1, 2005 bonded indebtedness, A.C.A. § 6-20-2503, and to reimburse school districts for "eligible new construction projects for which debt is incurred or funds are spent after January 1, 2005, and on or before June 30, 2006," A.C.A. § 6-20-2506. This conclusion is fully consistent with the accepted rule that an administrative regulation cannot be contrary to a statute. SeePledger v. C.B. Form Co., 316 Ark. 22, 871 S.W.2d (1994), citingState v. Burnett, 200 Ark. 655, 140 S.W.2d 673 (1940). However, having offered this general opinion, I must stress again that I am unable to opine on the scope or the propriety of any regulation that is the subject of a pending appeal. Moreover, I cannot opine regarding whether pre-January 1, 2005 bond revenues that are expended between January 1, 2005 and June 30, 2006 might fall within the terms of A.C.A. § 6-20-2506, given that this is presumably likewise at issue in the reportedly pending administrative appeal. See response to question 1, supra.
Question 4: Does Act 2206 of 2005 codified as Arkansas CodeAnnotated § 6-20-2502 preclude participation by the State in landacquisitions? For example, Arkansas Code Annotated §6-20-2502(10)(v) [sic: "-22502(10)(A)"] provides that newconstruction includes additions to existing academic facilitiesand new academic facilities. Arkansas Code Annotated §6-20-2502(1)(a) defines "academic facility" to mean a building orspace, including related areas such as physical plant orgrounds, where students receive instruction that is an integralpart of an adequate education as described in § 6-20-2302. Doesthe reference to "physical plant or ground" include the site forthe new construction?
Given the way you have phrased your question, I assume your use of the term "participation" is limited to the financial participation by the state authorized in A.C.A. § 6-20-2502. Subject to this assumption, I believe the answer to the first part of your question is "yes": the statute precludes the state from contributing financially to a school district's purchase of real estate. In my opinion, the answer to the second part of your question is "no."
With respect to new construction that falls within the provisions of the Act, `A.C.A. § 6-20-2502(10)(A) provides:
 "New construction" means any improvement to an academic facility and, if necessary, related areas such as the physical plant and grounds, that brings the state of condition or efficiency of the academic facility to a state of condition or efficiency better than the academic facility's original condition of completeness or efficiency.
(Emphasis added.) Subsection 6-20-2502(1)(A) further provides:
 "Academic facility" means a building or space, including related areas such as the physical plant and grounds, where students receive instruction that is an integral part of an adequate education as described in § 6-20-2302.
(Emphasis added.) Subsection 6-20-2506(a) provides in its entirety:
 There is established the Transitional Academic Facilities Program under which the Division of Public School Academic Facilities and Transportation shall provide state financial participation based on a school district's academic facilities wealth index in the form of reimbursement to a school district for eligible new construction projects for which debt is incurred or funds are spent after January 1, 2005, and on or before June 30, 2006.
At issue in your question is whether the acquisition by a school district of additional real property might be characterized as an "improvement" as that term is used in A.C.A. § 6-20-2502(10)(A). In addressing this question, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris,347 Ark. 760, 765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161,987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language. Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed.State ex rel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894
(1998).
Applying these principles, I am compelled to conclude that the Act does not envision the state's participating in school district land purchases. Subsection 6-20-2502(10)(A) is unambiguous in declaring that the term "new construction" will apply only to "improvements" made to qualifying school district property. The term "improvement" has a fixed legal meaning that does not include the purchase of additional real estate. As noted in 42. C.J.S. Improvements § 2 (1991):
 The term "improvements" is of broad significance, and improvements or, as they are sometimes called, betterments may be defined as improvements on realty which are more extensive than ordinary repairs, and enhance in a substantive degree the value of the property.
(Footnotes omitted.) Black's Law Dictionary (8th ed. 1999) defines the term as follows:
 An addition to real property, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance.
The notion of "bettering" property that inheres in these definitions clearly denotes improving the condition, and hence the value, of currently owned property, not to simply expanding the acreage one owns. In the event, then, that a school district were intent on purchasing property with an eye to building thereon, I believe the state might participate in funding the construction, which would clearly qualify as an "improvement" pursuant to the definition set forth at A.C.A. § 6-2-2502(1)(A), but not participate in funding the purchase of the real estate upon which the improvement would be made.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh