The Honorable James Norton State Representative 3132 Bolin Hill Road Harrison, AR 72601
Dear Representative Norton:
I am writing in response to your request for my opinion concerning the Teacher Deferred Retirement Option Plan, or "T-DROP," also referred to herein as "the plan" (A.C.A. §§24-7-1301—1315 (Repl. 2000 Supp. 2005)). You preface your question by reciting a state statute and a policy of the Arkansas Teacher Retirement System Board of Trustees ("Board"). The statute provides as follows:
 (a) The member's Teacher Deferred Retirement Option Plan account shall be the account in which shall be accumulated the:
 (1) Plan deposits made on behalf of the member; and
 (2) Plan interest.
 (b) At the end of each fiscal year, the Board of Trustees of the Arkansas Teacher Retirement System shall credit each plan participant's plan account with plan interest on the mean balance in the account for the fiscal year.
 (c) For the purposes of this section, plan interest shall be at the rate determined by the board from time to time.
A.C.A. § 24-7-1307 (Supp. 2005).[1]
The relevant Board policy states:
 The member's T-DROP account shall be the account into which his T-DROP contribution shall be deposited. At the end of each fiscal year, the member's T-DROP account shall be credited with T-DROP plan interest on the mean balance in the account for the fiscal year. Upon completion of ten (10) years of participation, the monthly deposits and accrued interest shall cease. No more than ten (10) years of interest shall be credited to any participant's T-DROP account. Upon application for retirement, the T-DROP benefits will be based on the account balance at the end of the tenth year.
T-DROP Policies (July 18, 2005) at 10-3-3.
You have presented the following question regarding the statute and policy:
 Because A.C.A. § 24-7-1307 states, in part, that a member's `account shall be the account in which shall be accumulated at plan interest the member's plan contribution', and the System `shall credit each plan participant's plan account with plan interest on the mean balance in the account for the fiscal year', will the Arkansas Teacher Retirement System Board of Trustees violate the statute if it implements its aforementioned policy?
RESPONSE
The apparent concern giving rise to your question is that A.C.A. § 24-7-1307 prevents the Board from setting a time limit on interest accrual as it has done under the policy recited above, which provides that "[n]o more than ten (10) years of interest shall be credited to any participant's T-DROP account."[2] The question presumably is prompted by §24-7-1307's requirement that interest shall be credited on T-DROP account balances at the end of each fiscal year, the concern being that this mandates interest accrual on T-DROP deposits throughout a member's participation in the plan.
Although this statute raises serious concerns regarding the Board policy, I cannot predict with certainty how a court would resolve the issue. Read literally, the statute would appear to require ongoing interest payments. I am uncertain, however, whether a reviewing court would give literal effect to the statute, or whether it would be persuaded, based upon a reading of the T-DROP legislation as a whole, that the policy is within the Board's authority and duty to make T-DROP cost-neutral to the System. Absent a judicial ruling, I believe legislative clarification will be necessary to definitively decide the matter.
It is of course an accepted maxim that an administrative regulation cannot be contrary to a statute. See, e.g., Pledgerv. C.B. Form Co., 316 Ark. 22, 871 S.W.2d (1994), citing Statev. Burnett, 200 Ark. 655, 140 S.W.2d 673 (1940). The statute in this instance, A.C.A. § 24-7-1307, requires that interest be credited to a participant's T-DROP account each fiscal year.Id. at subsection (b). This certainly suggests that the Board exceeded its authority when it adopted a limitation on the time period for interest accrual. Standing alone, therefore, subsection 24-7-1307(b) appears unambiguous and leads one to suspect that the Board policy is contrary to the statute.
I cannot definitively opine, however, that a court would view A.C.A. § 24-7-1307(b) in isolation from the other related provisions under T-DROP. The statute clearly provides that the Board must credit each account with "plan interest" each fiscal year. However, "plan interest" is undefined. The statute directs the Board to determine this rate of interest, seemingly without identifying any guiding principles or criteria. Id. at (c) ("[p]lan interest shall be at the rate determined by the Board from time to time.")[3] This differs markedly from the statutes that govern interest earnings under other deferred retirement plans, which routinely include a specific formula and a minimum rate for individual account balances. See, e.g.,
A.C.A. § 24-6-304(b) (Supp. 2005) (providing that for the first five years, members of the Arkansas State Police Officers Deferred Option Plan "shall earn interest at a rate of two (2) percentage points below the rate of return of the investment portfolio of the State Police Retirement System, but no less than the actuarially assumed interest rate as certified by the actuary[,]" and for periods beyond five years, members "shall earn interest equal to the actuarially assumed interest rate for that time"); A.C.A. § 24-11-434(e)(2)(A) (Supp. 2005) (Members participating in the Arkansas Police Officers' Deferred Option Plan "shall earn interest at a rate of two (2) percentage points below the rate of return of the investment portfolio of the . . . fund . . . but no less than the actuarial assumed interest rate as certified by the actuary.").[4]
If there is an ambiguity concerning "plan interest," a court will construe A.C.A. § 24-7-1307 as a whole and with reference to the other similar statutes relating to the same subject matter, bearing in mind the legislation's object and purpose. Seegenerally Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297 (1958) (reciting this well established general rule of statutory construction). A court will also look to the express language of other statutes not strictly in pari materia, but employing similar language and applying to similar persons and things.Stribling v. United States, 419 F.2d 1350 (8th Cir. 1969). In this regard, I note that "plan interest" under T-DROP is likely analogous to "regular interest" that is credited to individual member accounts under the general Arkansas Teacher Retirement System law (see A.C.A. §§ 24-7-202(20) and -410(d)(1) regarding "regular interest.") T-DROP is a benefit plan within the System, available to System members and administered by the System Board of Trustees. See A.C.A. §24-7-1302 (Repl. 2000). Accordingly, the System law is the most relevant law in construing T-DROP. I note further that "regular interest" under the System is to be set at such rate as [t]he Board shall adopt from time to time . . . as shall be necessaryfor the [System's] actuarial requirements. . . ." A.C.A.24-7-305(b) (Supp. 2005) (emphasis added). Looking, then, to the actuarial requirements under T-DROP, I find it relevant that cost neutrality to the System is a paramount concern. Although the original T-DROP legislation was not explicit in stating that the plan was to be implemented to realize cost neutrality, subsequent amendments make it clear that this has been the objective. See
Acts 1997, No. 953, § 1, codified at A.C.A. § 24-7-1306 (Supp. 2005) (adjusting the amount to be deposited in certain members' T-DROP accounts, and authorizing the Board to "make furtheradjustments on [T-DROP] to make it cost-neutral to thesystem[;]" Acts 2003, No. 991, §§ 1 and 2 (reducing plan contributions for certain members and observing that T-DROP "is not presently cost neutral. . . ." (Emphasis added)); Acts 2003, No. 992, §§ 1 and 2 (recommencing employer contributions to the System on behalf of all members in T-DROP, finding that "[T-DROP] is not presently cost neutral" and that the changes regarding employer contributions "are necessary to make it cost neutral[.]")
Bearing in mind the goal of cost neutrality, and the Board's apparent considerable discretion to realize this goal, one might read into A.C.A. § 24-7-1307 the Board's authority to adjust the variable rate of "plan interest" as necessary to make T-DROP cost neutral to the System. The question of whether the Board is authorized in this process to determine that interest will cease at some point depends, in my opinion, upon whether the statute must be given literal effect. I cannot definitively resolve this question. As I have explained above, I believe the answer ultimately turns on whether a court would view subsection24-7-1307 as unambiguous in requiring that plan interest must be credited to each participant's plan account each fiscal year. Resort to the courts may be necessary to resolve this issue, absent legislative clarification.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] You will note that the language of § 24-17-1307 set out above differs from that set forth in your correspondence. The statute was amended in 2005, and I have recited the amended version. See Acts 2005, No. 188. You recited the original T-DROP provision concerning the plan account, which identified the account as "the account in which shall be accumulated at plan interest the member's plan contributions." See Acts 1995, No. 1096, § 1. As you can see, the 2005 amendment added subsections (a) (1) and (2) and substituted the term "plan deposits" for "plan contributions." It also added subsection (c) regarding the rate of "plan interest."
[2] According to the information I have gathered, the policy setting a ten-year limitation on T-DROP interest was adopted in June, 1995, under the Administrative Procedures Act (A.C.A. §25-15-201 et seq.). This was shortly after the legislature established T-DROP. See Acts 1995, No. 1096 (approved April 10, 1995, entitled "An Act to Establish the Teacher Deferred Retirement Option Plan (T-DROP) within the Arkansas Teacher Retirement System.")
[3] Consistent with its authority and responsibility to determine this interest rate, the Board has determined that "plan interest" shall be the rate adopted by the Board "at the end of each fiscal year," with the stipulation that the rate "shall be 2% less than the System's average rate of return with a maximum of 6% and minimum of 2%." See T-DROP Policies (July 18, 2005) at 10-3-1.
[4] I am informed that the "actuarially assumed interest rate" is sometimes referred to as the "investment earnings assumption" and that it is commonly understood to mean the actuarially assumed rate of return on investments of the fund. It typically factors into determining employer contributions to the retirement system. See, e.g., A.C.A. §§ 24-4-202(e)(1) (Supp. 2005) (addressing employer contributions under the Arkansas Public Employees' Retirement System) and 24-8-809(c)(1)(A) (Supp. 2005) (contributions under the Arkansas District Judge Retirement System). I am told that the current actuarially assumed rate for the Teacher Retirement System is 8%.